# COMMISSIONER OF INTERNAL REVENUE *v.* SOLIMAN

No. 91–998.   Argued October 5, 1992—Decided January 12, 1993

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, BLACKMUN, O'CONNOR, and SOUTER, JJ., joined. BLACKMUN, J., filed a concurring opinion, *post*, p. 179. THOMAS, J., filed an opinion concurring in the judgment, in which SCALIA, J., joined, *post*, p. 180. STEVENS, J., filed a dissenting opinion, *post*, p. 184.

*Kent L. Jones* argued the cause for petitioner. With him on the briefs were *Solicitor General Starr, Acting Assistant Attorney General Bruton, Deputy Solicitor General Wallace, Richard Farber,* and *Teresa E. McLaughlin.*

*David M. Sokolow* argued the cause and filed a brief for respondent.

JUSTICE KENNEDY delivered the opinion of the Court.

We address in this decision the appropriate standard for determining whether an office in the taxpayer's home qualifies as his "principal place of business" under 26 U. S. C. § 280A(c)(1)(A). Because the standard followed by the Court of Appeals for the Fourth Circuit failed to undertake a comparative analysis of the various business locations of the taxpayer in deciding whether the home office was the principal place of business, we reverse.

I

Respondent Nader E. Soliman, an anesthesiologist, practiced his profession in Maryland and Virginia during 1983, the tax year in question. Soliman spent 30 to 35 hours per week with patients, dividing that time among three hospitals. About 80 percent of the hospital time was spent at Suburban Hospital in Bethesda, Maryland. At the hospitals, Soliman administered the anesthesia, cared for patients after surgery, and treated patients for pain. None of the three hospitals provided him with an office.

Soliman lived in a condominium in McLean, Virginia. His residence had a spare bedroom which he used exclusively as an office. Although he did not meet patients in the home office, Soliman spent two to three hours per day there on a variety of tasks such as contacting patients, surgeons, and hospitals by telephone; maintaining billing records and patient logs; preparing for treatments and presentations; satisfying continuing medical education requirements; and reading medical journals and books.

On his 1983 federal income tax return, Soliman claimed deductions for the portion of condominium fees, utilities, and depreciation attributable to the home office. Upon audit, the Commissioner disallowed those deductions based upon his determination that the home office was not Soliman's principal place of business. Soliman filed a petition in the Tax Court seeking review of the resulting tax deficiency.

The Tax Court, with six of its judges dissenting, ruled that Soliman's home office was his principal place of business. 94 T. C. 20 (1990). After noting that in its earlier decisions it identified the place where services are performed and income is generated in order to determine the principal place of business, the so-called "focal point test," the Tax Court abandoned that test, citing criticism by two Courts of Appeals. *Id.*, at 24–25 (noting *Meiers* v. *Commissioner*, 782 F. 2d 75 (CA7 1986); *Weissman* v. *Commissioner*, 751 F. 2d 512 (CA2 1984); and *Drucker* v. *Commissioner*, 715 F. 2d 67 (CA2 1983)). Under a new test, later summarized and adopted by the Court of Appeals, the Tax Court allowed the deduction. The dissenting opinions criticized the majority for failing to undertake a comparative analysis of Soliman's places of business to establish which one was the principal place. 94 T. C., at 33, 35.

The Commissioner appealed to the Court of Appeals for the Fourth Circuit. A divided panel of that court affirmed. 935 F. 2d 52 (1991). It adopted the test used in the Tax Court and explained it as follows:

> "[The] test . . . provides that where management or administrative activities are essential to the taxpayer's trade or business and the only available office space is in the taxpayer's home, the 'home office' can be his 'principal place of business,' with the existence of the following factors weighing heavily in favor of a finding that the taxpayer's 'home office' is his 'principal place of business:' (1) the office in the home is essential to the taxpayer's business; (2) he spends a substantial amount of time there; and (3) there is no other location available for performance of the office functions of the business." *Id.*, at 54.

For further support, the Court of Appeals relied upon a proposed IRS regulation related to home office deductions for salespersons. Under the proposed regulation, salespersons

would be entitled to home office deductions "even though they spend most of their time on the road as long as they spend 'a substantial amount of time on paperwork at home.'" *Ibid.* (quoting proposed Treas. Reg. § 1.280A–2(b)(3), 45 Fed. Reg. 52399 (1980), as amended, 48 Fed. Reg. 33320 (1983)). While recognizing that the proposed regulation was not binding on it, the court suggested that it "evince[d] a policy to allow 'home office' deductions for taxpayers who maintain 'legitimate' home offices, even if the taxpayer does not spend a majority of his time in the office." 935 F. 2d, at 55. The court concluded that the Tax Court's test would lead to identification of the "true headquarters of the business." *Ibid.* Like the dissenters in the Tax Court, Judge Phillips in his dissent argued that the plain language of § 280A(c)(1)(A) requires a comparative analysis of the places of business to assess which one is principal, an analysis that was not undertaken by the majority. *Ibid.*

Although other Courts of Appeals have criticized the focal point test, their approaches for determining the principal place of business differ in significant ways from the approach employed by the Court of Appeals in this case, see *Pomarantz* v. *Commissioner,* 867 F. 2d 495, 497 (CA9 1988); *Meiers* v. *Commissioner, supra,* at 79; *Weissman* v. *Commissioner, supra,* at 514–516; *Drucker* v. *Commissioner, supra,* at 69. Those other courts undertake a comparative analysis of the functions performed at each location. We granted certiorari to resolve the conflict. 503 U. S. 935 (1992).

## II

### A

Section 162(a) of the Internal Revenue Code allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business." 26 U. S. C. § 162(a). That provision is qualified, however, by various limitations, including one that prohibits otherwise allowable deductions "with respect to the use of a dwelling

unit which is used by the taxpayer . . . as a residence."
§ 280A(a). Taxpayers may nonetheless deduct expenses attributable to the business use of their homes if they qualify for one or more of the statute's exceptions to this disallowance. The exception at issue in this case is contained in § 280A(c)(1):

> "Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis—
>
> "(A) [as] *the principal place of business for any trade or business of the taxpayer[,]*
>
> "(B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or
>
> "(C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.
>
> "In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer." (Emphasis added.)

Congress adopted § 280A as part of the Tax Reform Act of 1976. Pub. L. 94–455, 94th Cong., 2d Sess. Before its adoption, expenses attributable to the business use of a residence were deductible whenever they were "appropriate and helpful" to the taxpayer's business. See, *e. g., Newi v. Commissioner*, 432 F. 2d 998 (CA2 1970). This generous standard allowed many taxpayers to treat what otherwise would have been nondeductible living and family expenses as business expenses, even though the limited business tasks performed in the dwelling resulted in few, if any, additional or incremental costs to the taxpayer. H. R. Rep. No. 94–658, p. 160 (1975); S. Rep. No. 94–938, p. 147 (1976). Comparing the newly enacted section with the previous one, the apparent purpose of § 280A is to provide a narrower scope for the

deduction, but Congress has provided no definition of "principal place of business."

In interpreting the meaning of the words in a revenue Act, we look to the "'ordinary, everyday senses'" of the words. *Malat* v. *Riddell,* 383 U. S. 569, 571 (1966) *(per curiam)* (quoting *Crane* v. *Commissioner*, 331 U. S. 1, 6 (1947)). In deciding whether a location is "the principal place of business," the commonsense meaning of "principal" suggests that a comparison of locations must be undertaken. This view is confirmed by the definition of "principal," which means "most important, consequential, or influential." Webster's Third New International Dictionary 1802 (1971). Courts cannot assess whether any one business location is the "most important, consequential, or influential" one without comparing it to all the other places where business is transacted.

Contrary to the Court of Appeals' suggestion, the statute does not allow for a deduction whenever a home office may be characterized as legitimate. See 935 F. 2d, at 55. That approach is not far removed from the "appropriate and helpful" test that led to the adoption of § 280A. Under the Court of Appeals' test, a home office may qualify as the principal place of business whenever the office is essential to the taxpayer's business, no alternative office space is available, and the taxpayer spends a substantial amount of time there. See *id.*, at 54. This approach ignores the question whether the home office is more significant in the taxpayer's business than every other place of business. The statute does not refer to the "principal office" of the business. If it had used that phrase, the taxpayer's deduction claim would turn on other considerations. The statute refers instead to the "principal place" of business. It follows that the most important or significant place for the business must be determined.

## B

In determining the proper test for deciding whether a home office is the principal place of business, we cannot de-

velop an objective formula that yields a clear answer in every case. The inquiry is more subtle, with the ultimate determination of the principal place of business being dependent upon the particular facts of each case. There are, however, two primary considerations in deciding whether a home office is a taxpayer's principal place of business: the relative importance of the activities performed at each business location and the time spent at each place.

Analysis of the relative importance of the functions performed at each business location depends upon an objective description of the business in question. This preliminary step is undertaken so that the decisionmaker can evaluate the activities conducted at the various business locations in light of the particular characteristics of the specific business or trade at issue. Although variations are inevitable in case-by-case determinations, any particular business is likely to have a pattern in which certain activities are of most significance. If the nature of the trade or profession requires the taxpayer to meet or confer with a client or patient or to deliver goods or services to a customer, the place where that contact occurs is often an important indicator of the principal place of business. A business location where these contacts occur has sometimes been called the "focal point" of the business and has been previously regarded by the Tax Court as conclusive in ascertaining the principal place of business. See 94 T. C., at 24–25. We think that phrase has a metaphorical quality that can be misleading, and, as we have said, no one test is determinative in every case. We decide, however, that the point where goods and services are delivered must be given great weight in determining the place where the most important functions are performed.

Section 280A itself recognizes that the home office gives rise to a deduction whenever the office is regularly and exclusively used "by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business." §280A(c)(1)(B). In that circumstance,

the deduction is allowed whether or not the home office is also the principal place of business. The taxpayer argues that because the point of delivery of goods and services is addressed in this provision, it follows that the availability of the principal place of business exception does not depend in any way upon whether the home office is the point of delivery. We agree with the ultimate conclusion that visits by patients, clients, and customers are not a required characteristic of a principal place of business, but we disagree with the implication that whether those visits occur is irrelevant. That Congress allowed the deduction where those visits occur in the normal course even when some other location is the principal place of business indicates their importance in determining the nature and functions of any enterprise. Though not conclusive, the point where services are rendered or goods delivered is a principal consideration in most cases. If the nature of the business requires that its services are rendered or its goods are delivered at a facility with unique or special characteristics, this is a further and weighty consideration in finding that it is the delivery point or facility, not the taxpayer's residence, where the most important functions of the business are undertaken.

Unlike the Court of Appeals, we do not regard the necessity of the functions performed at home as having much weight in determining entitlement to the deduction. In many instances, planning and initial preparation for performing a service or delivering goods are essential to the ultimate performance of the service or delivery of the goods, just as accounting and billing are often essential at the final stages of the process. But that is simply because, in integrated transactions, all steps are essential. Whether the functions performed in the home office are necessary to the business is relevant to the determination of whether a home office is the principal place of business in a particular case, but it is not controlling. Essentiality, then, is but part of the assess-

ment of the relative importance of the functions performed at each of the competing locations.

We reject the Court of Appeals' reliance on the availability of alternative office space as an additional consideration in determining a taxpayer's principal place of business. While that factor may be relevant in deciding whether an employee taxpayer's use of a home office is "for the convenience of his employer," § 280(c)(1), it has no bearing on the inquiry whether a home office is the principal place of business. The requirements of particular trades or professions may preclude some taxpayers from using a home office as the principal place of business. But any taxpayer's home office that meets the criteria here set forth is the principal place of business regardless of whether a different office exists or might have been established elsewhere.

In addition to measuring the relative importance of the activities undertaken at each business location, the decisionmaker should also compare the amount of time spent at home with the time spent at other places where business activities occur. This factor assumes particular significance when comparison of the importance of the functions performed at various places yields no definitive answer to the principal place of business inquiry. This may be the case when a taxpayer performs income-generating tasks at both his home office and some other location.

The comparative analysis of business locations required by the statute may not result in every case in the specification of which location is the principal place of business; the only question that must be answered is whether the home office so qualifies. There may be cases when there is no principal place of business, and the courts and the Commissioner should not strain to conclude that a home office qualifies for the deduction simply because no other location seems to be the principal place. The taxpayer's house does not become a principal place of business by default.

Justice Cardozo's observation that in difficult questions of deductibility "[l]ife in all its fullness must supply the answer to the riddle," *Welch* v. *Helvering,* 290 U. S. 111, 115 (1933), must not deter us from deciding upon some rules for the fair and consistent interpretation of a statute that speaks in the most general of terms.   Yet we accept his implicit assertion that there are limits to the guidance from appellate courts in these cases.   The consequent necessity to give considerable deference to the trier of fact is but the law's recognition that the statute is designed to accommodate myriad and ever-changing forms of business enterprise.

### III

Under the principles we have discussed, the taxpayer was not entitled to a deduction for home office expenses.   The practice of anesthesiology requires the medical doctor to treat patients under conditions demanding immediate, personal observation.   So exacting were these requirements that all of respondent's patients were treated at hospitals, facilities with special characteristics designed to accommodate the demands of the profession.   The actual treatment was the essence of the professional service.   We can assume that careful planning and study were required in advance of performing the treatment, and all acknowledge that this was done in the home office.   But the actual treatment was the most significant event in the professional transaction.   The home office activities, from an objective standpoint, must be regarded as less important to the business of the taxpayer than the tasks he performed at the hospital.

A comparison of the time spent by the taxpayer further supports a determination that the home office was not the principal place of business.   The 10 to 15 hours per week spent in the home office measured against the 30 to 35 hours per week at the three hospitals are insufficient to render the home office the principal place of business in light of all of

the circumstances of this case. That the office may have been essential is not controlling.

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE BLACKMUN, concurring.

I join the Court's opinion but add these few words primarily to fortify my own conclusions:

This case concerns § 280A(c)(1)(A) of the Internal Revenue Code, 26 U. S. C. § 280A(c)(1)(A). A deduction from gross income is a matter of grace, not of right, *Commissioner* v. *Sullivan*, 356 U. S. 27, 28 (1958); *Commissioner* v. *Tellier*, 383 U. S. 687, 693 (1966), so that our analysis starts with an assumption of nondeductibility. Precise exceptions to this are then provided by the statute.

Although he is a licensed physician who treats patients, respondent finds no solace in subsection (B) of § 280A(c)(1). Subsection (B) requires that the place of business be "used by patients . . . in meeting or dealing with the taxpayer," a factual element that is lacking here unless the physician-taxpayer's papers, records, and telephone calls are to be deemed to personify the patient in the office. Such an interpretation, in my view, would stretch the statute too far.

Respondent is thus confined to subsection (A), which uses the vital words "principal place of business." As JUSTICE KENNEDY points out, this phrase invites and compels a comparison, an exercise the Court of Appeals did not undertake. When comparison is made, this taxpayer loses his quest for a deduction. The bulk of his professional time and performance is spent in the hospitals. By any measure, the greater part of his remuneration is generated and earned there. His home office well may be important, even essential, to his professional activity, but it is not "principal." The fact that it is his primary, perhaps his only, office is not in itself enough.

This result is compelled by the language of the statute. Congress must change the statute's words if a different result is desired as a matter of tax policy.

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, concurring in the judgment.

Today the Court announces that there is "no one test," *ante*, at 175, to determine whether a home office constitutes a taxpayer's "principal place of business" within the meaning of 26 U.S.C. §280A(c)(1)(A), and concludes that whether a taxpayer will be entitled to a home office deduction will be "dependent upon the particular facts of each case," *ante*, at 175. The Court sets out two "primary considerations," *ibid.*, to guide the analysis—the importance of the functions performed at each business location and the time spent at each location. I think this inquiry, "subtle" though it may be, *ibid.*, will unnecessarily require the lower courts to conduct full-blown evidentiary hearings each time the Commissioner challenges a deduction under §280A(c)(1)(A). Moreover, as structured, the Court's "test" fails to provide clear guidance as to how the two-factor inquiry should proceed. Specifically, it is unclear whether the time element and importance-of-the-functions element are of equal significance. I write separately because I believe that in the overwhelming majority of cases (including the one before us), the "focal point" test—which emphasizes the place where the taxpayer renders the services for which he is paid or sells his goods—provides a clear, reliable method for determining whether a taxpayer's home office is his "principal place of business." I would employ the totality-of-the-circumstances inquiry, guided by the two factors discussed by the Court, only in the small minority of cases where the home office is one of several locations where goods or services are delivered, and thus also one of the multiple locations where income is generated.

I certainly agree that the word "principal" connotes "'most important,'" *ante,* at 174, but I do not agree that this definition requires courts in every case to resort to a totality-of-the-circumstances analysis when determining whether the taxpayer is entitled to a home office deduction under § 280A(c)(1)(A). Rather, I think it is logical to assume that the single location where the taxpayer's business income is generated—*i. e.,* where he provides goods or services to clients or customers—will be his principal place of business. This focal point standard was first enunciated in *Baie* v. *Commissioner,* 74 T. C. 105 (1980),[1] and has been consistently applied by the Tax Court (until the present case) in determining whether a taxpayer's home office is his principal place of business.

Indeed, if one were to glance quickly through the Court's opinion today, one might think the Court was in fact adopting the focal point test. At two points in its opinion the Court hails the usefulness of the focal point inquiry: It states that the place where goods are delivered or services rendered must be given "great weight in determining the place where the most important functions are performed," *ante,* at 175, and that "the point where services are rendered or goods delivered is a principal consideration in most cases," *ante,* at 176. In fact, the Court's discomfort with the focal point test seems to rest on two fallacies—or perhaps one fallacy and a terminological obstinacy. First, the Court rejects the focal point test because "no one test is determinative in every case."

---

[1] In *Baie,* the taxpayer operated a hot dog stand. She prepared all the food in the kitchen at her home and transferred it daily to the stand for sale. She also used another room in her house exclusively for the stand's bookkeeping. The Tax Court denied the taxpayer a home office deduction under § 280A(c)(1)(A), recognizing that although "preliminary preparation may have been beneficial to the efficient operation of petitioner's business, both the final packaging for consumption and sales occurred on the premises of the [hot dog stand]." 74 T. C., at 109–110. Thus, the court concluded that the hot dog stand was the "focal point of [the taxpayer's] activities." *Id.,* at 109.

*Ante*, at 175. But the focal point test, as I interpret it, is *not* always determinative: Where it provides no single principal place of business, the "totality of the circumstances" approach is invoked. Second, the Court rejects the focal point test because its name has a "metaphorical quality that can be misleading." *Ibid.* But rechristening it the "place of sale or service test"—or whatever label the Court would find less confusing—is surely a simple matter.

The Commissioner's quarrel with the focal point test is that "it ignores management functions." Tr. of Oral Arg. 24.[2] To illustrate this point, the Commissioner at oral argument presented the example of a sole proprietor who runs a rental car company with many licensees around the country, and who manages the licensees from his home, advising them on how to operate the businesses. Yet the Commissioner's unease is unfounded, since the focal point inquiry easily resolves this example. The taxpayer derives his income from *managing* his licensees, and he performs those services at his home office. Thus, his home office would be his "principal place of business" under § 280A(c)(1)(A). On the other hand, if the taxpayer owned several car dealerships and used his home office to do the dealership's bookkeeping, he would not be entitled to deduct the expenses of his home office even if he spent the majority of his time there. This is because the focal points of that business would be the dealerships where the cars are sold—*i. e.*, where the taxpayer sells the goods for which he is paid.

---

[2] The Commissioner's position is not entirely consistent. At one point in his brief he seems to advocate adopting the focal point test: "Since a 'business' under the Code must be an activity designed to produce income, the principal place of a 'business' should ordinarily refer to the principal place where income is earned. The 'focal point' test previously applied by the Tax Court properly encapsulates that principle." Brief for Petitioner 26, n. 17. At other points in his brief, however, the Commissioner appears to advocate the very test adopted by the Court. See *id.*, at 18, 23–24.

There will, of course, be the extraordinary cases where the focal point inquiry will provide no answer. One example is the sole proprietor who buys jewelry wholesale through a home office, and sells it both at various craft shows and through mail orders out of his home office. In that case, the focal point test would yield more than one location where income is generated, including the home. Where the taxpayer's business involves multiple points of sale, a court would need to fall back on a totality-of-the-circumstances analysis. That inquiry would be rationally guided, of course, by the two factors set out in the Court's opinion: an analysis of the relative importance of the functions performed at each business location and the time spent at each. The error of the Tax Court's original construction of the focal point test was the implicit view that the test allowed no escape valve. Clearly it must. Nevertheless, since in the vast majority of cases the focal point inquiry will provide a quick, objective, and reliable method of ascertaining a taxpayer's "principal place of business," I think the Court errs today in not unequivocally adopting it.

The difficulty with the Court's two-part test can be seen in its application to the facts of this case. It is uncontested that the taxpayer is paid to provide one service—anesthesiology. It is also undisputed that he performs this service at several different hospitals. At this juncture, under the focal point test, a lower court's inquiry would be complete: On these facts, the taxpayer's home office would not qualify for the § 280A(c)(1)(A) deduction. Yet under the Court's formulation, the lower court's inquiry has only just begun. It would need to hear evidence regarding the types of business activities performed at the home office and the relative amount of time the taxpayer spends there. It just so happens that in this case the taxpayer spent 30 to 35 hours per week at the hospitals where he worked. But how would a court answer the § 280A(c)(1)(A) question under the standard announced today if the facts were altered slightly, so that

the taxpayer spent 30 to 35 hours at his home office and only 10 hours actually performing the service of anesthesiology at the various hospitals? Which factor would take precedence? The importance of the activities undertaken at the home compared to those at the hospitals? The number of hours spent at each location? I am at a loss, and I am afraid the taxpayer, his attorney, and a lower court would be as well.

We granted certiorari to clarify a recurring question of tax law that has been the subject of considerable disagreement. Unfortunately, this issue is no clearer today than it was before we granted certiorari. I therefore concur only in the Court's judgment.

JUSTICE STEVENS, dissenting.

Respondent is self-employed. He pays the ordinary and necessary expenses associated with the operation of his office in McLean, Virginia; it is the only place of business that he maintains. In my opinion the Tax Court and the Court of Appeals correctly concluded that respondent is entitled to an income tax deduction for the cost of maintaining that office. This Court's contrary conclusion misreads the term "principal place of business" in § 280A of the Internal Revenue Code,[1] deviates from Congress' purpose in enacting that pro-

---

[1] Section 601 of the Tax Reform Act of 1976, 90 Stat. 1520, 1569–1572, as amended, 26 U. S. C. § 280A, provides, in part:

"(a) General Rule

"Except as otherwise provided in this section, in the case of a taxpayer who is an individual . . . , no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

"(c) Exceptions for certain business or rental use; limitation on deductions for such use

"(1) Certain business use

"Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis—

vision, and unfairly denies an intended benefit to the growing number of self-employed taxpayers who manage their businesses from a home office.

I

This case involves an exception to the general rule that "ordinary and necessary" business expenses are deductible.[2] There is no dispute that the expenses at issue fall within that general category. They are questioned only because the office is located within respondent's residence. If that office were located in any other place—even in someone *else's* home—the general rule would apply, and respondent could have deducted the costs of its maintenance. If he had been prosperous enough to own a house and property on which a separate structure was located, he could have maintained that structure as an office and deducted the costs. If his business were so structured that he met regularly with clients and patients at his home office, he also could have deducted the costs. And if he spent two or three hours a day in his home office and a similar amount of time in each of three or four separate hospitals he might also be able to deduct the costs; at least the Court's opinion does not begin to explain how the deduction of the costs in that case might

---

"(A) [as] the principal place of business for any trade or business of the taxpayer[,]

"(B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or

"(C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

"In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer."

[2] Section 162(a) of the Code provides, in part:

"There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including . . . rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property . . . ."

be denied, except to insist that "[t]he taxpayer's house does not become a principal place of business by default." See *ante*, at 177. Because respondent chose to preserve one room in his home as an office, however, and because his business was so arranged that he spent most (though by no means all) of his working hours at one hospital, the Court holds that the costs of its maintenance may not be deducted.

Deductions, as JUSTICE BLACKMUN notes, *ante*, at 179, are a matter of legislative grace, but that is no reason to read into them unnecessary restrictions that result in the unequal treatment of similarly situated taxpayers. Such unfair treatment could, of course, have been required by the Tax Code, if Congress had wanted, for example, to discourage parents from working at home; to promote the construction of office buildings or separate structures on residential real estate; or to encourage hospitals to keep doctors near their patients. We have no reason to think that Congress intended any such results.[3] It is clear, in fact, that Congress intended only to prevent deductions for home offices that were not genuinely necessary business expenses. Because the tests Congress imposed to prevent abuse do not require us to deny respondent's claimed deductions for his home office, I would affirm the decision of the Court of Appeals.

## II

Before 1976, home office deductions were allowed whenever the use of the office was "appropriate and helpful" to the taxpayer.[4] That generous standard was subject to both abuse and criticism; it allowed homeowners to take deductions for personal expenses that would have been incurred even if no office were maintained at home and its vagueness

---

[3] As the Tax Court wrote, "Section 280A was not enacted to compel a taxpayer to rent office space rather than work out of his own home." 94 T. C. 20, 29 (1990).

[4] See *Commissioner* v. *Tellier*, 383 U. S. 687, 689 (1966); *Newi* v. *Commissioner*, 432 F. 2d 998 (CA2 1970).

made it difficult to administer.[5]  It was particularly favorable to employees who worked at home on evenings and weekends even though they had adequate office facilities at their employer's place of business.[6]  In response to these criticisms, Congress enacted § 280A to prohibit deductions for business uses of dwelling units unless certain specific conditions are satisfied.

The most stringent conditions in § 280A, enacted to prevent abuse by those who wanted to deduct purely residential costs, apply to deductions claimed by employees.[7]  This provision alone prevents improper deduction for any *second* of-

---

[5] See, *e. g.*, S. Rep. No. 94–938, pt. 1, p. 147 (1976):

"With respect to the 'appropriate and helpful' standard employed in the court decisions, the determination of the allowance of a deduction for these expenses is necessarily a subjective determination.  In the absence of definitive controlling standards, the 'appropriate and helpful' test increases the inherent administrative problems because both business and personal uses of the residence are involved and substantiation of the time used for each of these activities is clearly a subjective determination.  In many cases the application of the appropriate and helpful test would appear to result in treating personal living, and family expenses which are directly attributable to the home (and therefore not deductible) as ordinary and necessary business expenses, even though those expenses did not result in additional or incremental costs incurred as a result of the business use of the home."

[6] Congress may have been particularly offended by the home office deductions claimed by employees of the Internal Revenue Service.  See *Bodzin* v. *Commissioner*, 60 T. C. 820 (1973), rev'd, 509 F. 2d 679 (CA4), cert. denied, 423 U. S. 825 (1975); *Sharon* v. *Commissioner*, 66 T. C. 515 (1976), aff'd, 591 F. 2d 1273 (CA9 1978), cert. denied, 442 U. S. 941 (1979). The Senate Report also used a common example of potential abuse:

"For example, if a university professor, who is provided an office by his employer, uses a den or some other room in his residence for the purpose of grading papers, preparing examinations or preparing classroom notes, an allocable portion of certain expenses . . . were incurred in order to perform these activities."  S. Rep. No. 94–938, pt. 1, at 147.

[7] In addition to the conditions applicable to self-employed taxpayers, an employee must demonstrate that his office is maintained "for the convenience of his employer."  See 26 U. S. C. § 280A(c)(1).

fice located at home and used merely for the taxpayer's convenience. It thus responds to the major concern of the Commissioner identified in the legislative history.[8]

Self-employed persons, such as respondent, must satisfy three conditions. Each is more strict and more definite than the "appropriate and helpful" standard that Congress rejected.

First, a portion of the dwelling unit must be used "exclusively" for a business purpose. The Commissioner's proposed regulations construe the exclusive use requirement with appropriate strictness. They state that a portion of a dwelling unit is used exclusively "only if there is no use of that portion of the unit at any time during the taxable year other than for business purposes."[9] This requirement is itself sufficient to eliminate many of the abuses associated with the pre-1976 "appropriate and helpful" standard; the taxpayer must now entirely devote a separately identifiable space, usually an entire room, to his business.[10] Respondent strictly satisfied that condition in this case.

Second, the portion of the dwelling unit that is set aside for exclusive business use must be so "used on a regular basis." Although this condition is not as specific as the "exclusive use" requirement, it obviously requires that the use

---

[8] "With respect to the maintenance of an office in an employee's home, the position of the Internal Revenue Service is that the office must be required by the employer as a condition of employment and regularly used for the performance of the employee's duties. . . .

"Certain courts have held that a more liberal standard than that applied by the Internal Revenue Service is appropriate. Under these decisions, the expenses attributable to an office maintained in an employee's residence are deductible if the maintenance of the office is 'appropriate and helpful' to the employee's business." S. Rep. No. 94–938, pt. 1, at 144–145 (citations omitted); see also n. 6, *supra*.

[9] Proposed Treas. Reg. § 1.280A–2(g)(1), 45 Fed. Reg. 52399, 52404 (1980), as amended, 48 Fed. Reg. 33320, 33324 (1983).

[10] The Court fails to appreciate the significance of the exclusive use requirement when it criticizes the Court of Appeals' holding as "not far removed" from the test that led to the adoption of § 280A. See *ante*, at 174.

be substantial. In this case respondent spent two or three hours a day in his office communicating with surgeons, patients, insurance companies, and hospitals; doing his bookkeeping; handling his correspondence; and preparing himself for his professional assignments at other locations. He received business calls on his office answering machine and, of course, his business mail was addressed to that office. Again, because these uses occurred on a regular basis, it is undisputed that respondent has satisfied this requirement.

Third, the use of the space must be as a "place of business" satisfying one of three alternative requirements. It must be used as:

> "(A) the principal place of business for any trade or business of the taxpayer[,]
>
> "(B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, *or*
>
> "(C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business." 26 U. S. C. § 280A(c)(1) (emphasis added).

Subsection (C) is obviously irrelevant in this case, as is subsection (B). The office itself is not a separate structure, and respondent does not meet his patients there. Each of the three alternatives, however, has individual significance, and it is clear that subsection (A) was included to describe places where the taxpayer does *not* normally meet with patients, clients, or customers. Nevertheless, the Court suggests that Soliman's *failure* to meet patients in his home office supports its holding.[11] It does not. By injecting a requirement of subsection (B) into subsection (A) the Court renders the

---

[11] See *ante*, at 176: "That Congress allowed the deduction where those visits occur in the normal course even when some other location is the principal place of business indicates their importance in determining the nature and functions of any enterprise."

latter alternative entirely superfluous. Moreover, it sets the three subsections on unequal footing: Subsection (A) will rarely apply unless it includes subsection (B); subsection (B) is preeminent; and the logic of the Court's analysis would allow a future court to discover that, under subsection (C), a separate structure is not truly "separate" (as a principal place of business is not truly "principal") unless it is *also* the site of meetings with patients or clients.

The meaning of "principal place of business" may not be absolutely clear, but it is absolutely clear that a taxpayer may deduct costs associated with his home office if it is his principal place of business *or* if it is a place of business used by patients in the normal course of his business *or* if it is located in a separate structure used in connection with his business. A home office could, of course, satisfy all three requirements, but to suggest that it need always satisfy subsection (B), or even that whether it satisfies (B) has anything to do with whether it satisfies (A), encourages the misapplication of a relatively simple provision of the Revenue Code.

By conflating subsections (A) and (B) the Court makes the same mistake the Courts of Appeals refused to make when they rejected the Tax Court's "focal point" test, which proved both unworkable and unfaithful to the statute.[12] In this case the Tax Court itself rejected that test because it "merges the 'principal place of business' exception with the 'meeting clients' exception . . . from section 280A." 94 T. C. 20, 25 (1990). The Court today steps blithely into territory in which several Courts of Appeals and the Tax Court, whose experience in these matters is much greater than ours, have

---

[12] See *Meiers* v. *Commissioner*, 782 F. 2d 75 (CA7 1986), rev'g 53 TCM 2475 (1984), ¶ 84,607 P–H Memo TC; *Weissman* v. *Commissioner*, 751 F. 2d 512 (CA2 1984); *Drucker* v. *Commissioner*, 715 F. 2d 67 (CA2 1983), rev'g 79 T. C. 605 (1982); see also Note, Home Office Deductions: Deserving Taxpayers Finally Get a Break, 45 Tax Law. 247, 251–254 (1991); Sommer, I. R. C. Section 280A: The Status of the Home Office Deduction—A Call to Congress to Get the House in Order, 16 So. Ill. U. L. J. 501, 519–522 (1992).

learned not to tread; in so doing it reads into the statute a limitation Congress never meant to impose.

The principal office of a self-employed person's business would seem to me to be the most typical example of a "principal place of business." It is, indeed, the precise example used in the Commissioner's proposed regulations of deductible home offices for taxpayers like respondent, who have no office space at the "focal point" of their work.[18] Moreover, it is a mistake to focus attention entirely on the adjective "principal" and to overlook the significance of the term "place of business." When the term "principal place of business" is used in other statutes that establish the jurisdiction or venue in which a corporate defendant may be sued, it commonly identifies the headquarters of the business.[14] The only place where a business is managed is fairly described as its "principal" place of business.[15]

The Court suggests that Congress would have used the term " 'principal office' " if it had intended to describe a home office like respondent's. *Ante*, at 174. It is probable, however, that Congress did not select the narrower term because it did not want to exclude some business uses of dwelling units that should qualify for the deduction even though they

---

[18] The proposed regulations stated that "if an outside salesperson has no office space except at home and spends a substantial amount of time on paperwork at home, the office in the home may qualify as the salesperson's principal place of business." 45 Fed. Reg. 52403 (1980), 48 Fed. Reg. 33324 (1983).

[14] For example, in *Texas* v. *New Jersey*, 379 U. S. 674, 680 (1965), we used the terms "main office" and "principal place of business" interchangeably. I recognize that there is disagreement over the proper interpretation of the term in 28 U. S. C. § 1332(c)(1), with some courts regarding the home office as the principal place of business and others regarding it as the place where the principal operations of the corporation are conducted. Under either view, however, the relevant place is one where the corporation owns or rents the premises; it is not a place owned by a third party for whom corporate representatives perform services.

[15] Among the definitions of the word "principal" is "chief" or "most influential." Webster's Third New International Dictionary (1966).

are not offices. Because some examples that do not constitute offices come readily to mind—an artist's studio, or a cabinetmaker's basement—it is easy to understand why Congress did not limit this category that narrowly.

The test applied by the Tax Court, and adopted by the Court of Appeals, is both true to the statute and practically incapable of abuse. In addition to the requirements of exclusive and regular use, those courts would require that the taxpayer's home office be essential to his business and be the only office space available to him. 935 F. 2d 52, 54 (CA4 1991); 94 T. C., at 29. Respondent's home office is the only place where he can perform the administrative functions essential to his business. Because he is not employed by the hospitals where he works, and because none of those hospitals offers him an office, respondent must pay all the costs necessary for him to have any office at all. In my judgment, a principal place of business is a place maintained *by* or (in the rare case) *for* the business. As I would construe the statute in this context, respondent's office is not just the "principal" place of his trade or business; it is the *only* place of *his* trade or business.[16]

Nothing in the history of this statute provides an acceptable explanation for disallowing a deduction for the expense of maintaining an office that is used exclusively for business purposes, that is regularly so used, and that is the only place available to the taxpayer for the management of his business. A self-employed person's efficient use of his or her resources should be encouraged by sound tax policy. When it is clear that no risk of the kind of abuse that led to the enactment of § 280A is present, and when the taxpayer has satisfied a reasonable, even a strict, construction of each of the condi-

---

[16] If his tax form asked for the address of his principal place of business, respondent would certainly have given his office address (he did, of course, give that address as his business address on the relevant tax forms). It borders on the absurd to suggest that he should have identified a place over which he has no control or dominion as *his* place.

tions set forth in § 280A, a deduction should be allowed for the ordinary cost of maintaining his home office.

In my judgment, the Court's contrary conclusion in this case will breed uncertainty in the law,[17] frustrate a primary purpose of the statute, and unfairly penalize deserving taxpayers. Given the growing importance of home offices, the result is most unfortunate.

I respectfully dissent.

---

[17] Most, if not all, of the uncertainty in cases debating the relative merits of the "focal point" test and the "facts and circumstances" test, as well as the uncertainty that today's opinion is sure to generate, would be eliminated by defining the term "place of business" to encompass only property that is owned or leased by the taxpayer or his employer.