T.C. Memo. 2000-158

UNITED STATES TAX COURT

RANDOLPH JOHN BEALE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18290-98.                        Filed May 17, 2000.

Randolph John Beale, pro se.

<u>Felicia L. Branch</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, <u>Judge</u>:  Respondent determined deficiencies in and
additions to petitioner's Federal income taxes as follows:

|       |            | Additions to Tax  |            |
| Year  | Deficiency | Sec. 6651(a)(1)   | Sec. 6654  |
|-------|------------|-------------------|------------|
| 1992  | $14,966    | $1,816.25         | -0-        |
| 1993  | 17,412     | 2,399.75          | $365.81    |
| 1994  | 17,336     | 2,569.75          | 492.70     |
| 1995  | 15,202     | 1,466.25          | [1]261.76  |

[1]The deficiency amounts listed above do not reflect Federal income tax withheld from petitioner's wages.  See, e.g., sec. 301.6215-1, Proced. & Admin. Regs., which provides that "the entire amount redetermined as the deficiency by the decision of the Tax Court which has become final shall be assessed," while only "the unpaid portion of the amount so assessed shall be paid by the taxpayer upon notice and demand therefor."  (Emphasis added.)

The issues for decision are:  (1) Whether amounts paid as "family support" were alimony and, therefore, deductible by petitioner.  We hold that certain of these amounts were deductible by petitioner in the amounts stated.  (2) Whether petitioner may deduct various Schedule C, Profit or Loss From Business, expenses for the taxable years at issue.  We hold he may not.  (3) Whether petitioner is entitled to claim additional exemptions for his spouse and her two daughters for taxable years 1993 through 1995.[1]  We hold he is not.  (4) Whether petitioner is entitled to head-of-household filing status in 1993 and married filing joint return status in 1994 and 1995. We hold he is not.  (5) Whether petitioner is liable for additions to tax

---

[1]The parties stipulated that petitioner was unmarried during taxable years 1992 and 1993.  For taxable year 1992, the proper filing status of petitioner is "single".  For taxable year 1993, the proper filing status of petitioner is still at issue.

under section 6651(a)[2] for failure to timely file his Federal income tax returns for the taxable years in issue.  We hold he is.  (6) Whether petitioner is liable for additions to tax under section 6654 for failure to pay estimated tax for the taxable years in issue.  We hold he is.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time the petition herein was filed, petitioner resided in Chuluota, Florida.

Petitioner did not file Federal income tax returns for the years in issue.

At various times during the years in issue, petitioner was employed full time as an engineer for the following companies: Linde Hydraulics Corp. (Linde), Hartmann Controls, Inc. (Hartmann), Motiontek, Inc. (Motiontek), and Worksmart, Inc. (Worksmart).  Petitioner earned income from his full-time employment as follows:

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

| Employer  | 1992     | 1993     | 1994     | 1995     |
|-----------|----------|----------|----------|----------|
| Linde     | $57,840  | $58,167  | $60,585  | --       |
| Hartmann  | --       | --       | 4,469    | $14,606  |
| Motiontek | --       | --       | --       | 10,400   |
| Worksmart | --       | --       | --       | 35,476   |

For taxable years 1992, 1993, and 1994, Linde withheld Federal income taxes of $7,701, $7,813, and $5,925, respectively, from petitioner's wages. Additionally, for taxable year 1994, Hartmann withheld Federal income tax of $857, and for taxable year 1995, Hartmann, Motiontek, and Worksmart withheld Federal income tax of $2,845, $900, and $5,592, respectively.

In addition to his full-time employment, petitioner performed services as an engineering consultant. Petitioner's consulting business involved working principally for two companies: Tri-State Hydraulics, Inc. (Tri-State), and American Fluid Power, Inc. (American). To perform his business services, petitioner would travel by automobile from his home to approximately nine client sites in Wisconsin and Illinois. Petitioner earned nonemployee compensation from his consulting services as follows:

| Employer  | 1992    | 1993     | 1994    |
|-----------|---------|----------|---------|
| Tri-State | $6,600  | $12,626  | $7,000  |
| American  | 263     | 1,767    | 1,212   |

Petitioner operated his consulting business out of a garage attached to his residence. The garage contained a desk, a drafting table, two phones, and filing cabinets. The garage made

up 15 percent of the total square footage of petitioner's rental house. During the years in issue petitioner's total annual housing costs were as follows:

| Year | Rent | Gas | Electricity |
|------|------|-----|-------------|
| 1992 | $7,200 | $1,440 | $540 |
| 1993 | 7,200 | 1,500 | 600 |
| 1994 | 8,700 | 1,560 | 660 |
| 1995 | (not in record) | | |

For 1992 through 1994, petitioner calculated a home office deduction by multiplying the total costs of rent and utilities by 15 percent.

In addition to his employee and nonemployee compensation, petitioner received earned interest income from Security Bank, S.S.B., of $72 in 1992, $76 in 1993, $77 in 1994, and $83 in 1995. Petitioner also received $47 in interest income from Cornerstone Credit Union in 1995. Finally, petitioner received $6,916 in unemployment compensation during 1995.

During the years in issue, petitioner made regular payments to two former wives. Petitioner was divorced from his first wife, Ms. Sandra Eads, in 1981. Pursuant to a valid, enforceable divorce judgment filed on May 15, 1981, petitioner is required to pay Ms. Eads $650 per month as "family support". The judgment provides in relevant part:

> Sixth. The petitioner shall pay to the respondent as and for family support the sum of Six Hundred Fifty Dollars ($650.00) per month. Said sum shall be paid through the Clerk of the Circuit Court of Milwaukee County on the 5th day of each month, commencing May 5, 1981. Said payments, being for family support shall be

> tax deductible to the petitioner, and taxable to the
> respondent [Ms. Eads] on their respective federal and
> state income tax returns.  * * *

For the taxable years at issue, Ms. Eads included the following payment amounts as alimony on her Federal income tax returns: $7,250 in 1992, $7,250 in 1993, $7,200 in 1994, and $3,199 in 1995.  Petitioner agrees that these are the amounts he actually paid.

Petitioner was divorced from his second wife, Ms. Susan Tang, in May 1989.  He was required to pay $400 per month in "family support".  Petitioner had an "agreement in principle" with Ms. Tang that she would include the payments to her as income on her Federal income tax return, and petitioner would claim a deduction for these payments on his Federal income tax return.

Petitioner was not married at the end of taxable years 1992 and 1993; however, petitioner was married at the end of taxable years 1994 and 1995.  Petitioner's third wife has two daughters.

### OPINION

Petitioner has the burden of proof with regard to all the issues raised in this case.  See Rule 142(a).

### Issue 1.  Whether Petitioner Is Entitled to Alimony Deductions During the Years in Issue

In this case, petitioner made "family support" payments to both Ms. Eads and Ms. Tang.  Petitioner claims that the amounts

he paid to Ms. Eads and Ms. Tang were deductible as alimony during the years in issue under section 215.

Ms. Eads

Section 215[3] provides a deduction for amounts paid by a taxpayer to a former spouse if the payee spouse is required to include these amounts in gross income under section 71.[4]

---

[3]Sec. 215 was amended by the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 422(b), 98 Stat. 494, 797.  The amendment applies to divorce or separation instruments (as defined in sec. 71(b)(2), as amended) executed after Dec. 31, 1984, or executed before Jan. 1, 1985, but modified on or after that date if the modification expressly provides that the amendments to sec. 215 apply to the modification.  This amendment is not applicable to petitioner's divorce from Ms. Eads, and references to sec. 215 are to this section before its amendment.

[4]Sec. 71 was amended by DEFRA sec. 422(a), 98 Stat. 795. The amendment applies to divorce or separation instruments (as defined in sec. 71(b)(2), as amended) executed after Dec. 31, 1984, or executed before Jan. 1, 1985, but modified on or after that date if the modification expressly provides that the amendments to sec. 71 apply to the modification.  This amendment is not applicable to petitioner's divorce from Ms. Eads, and references to sec. 71 are to this section before its amendment.

Section 71(a)(1)[5] provides for inclusion in the payee spouse's gross income of periodic payments received by that spouse pursuant to a decree of divorce or separate maintenance in discharge of a legal obligation imposed on or incurred by the payor spouse under the decree or under a written instrument incident to the divorce or separation. Child support payments are generally not includable in the payee spouse's income and are not deductible by the payor spouse. When the decree, instrument, or agreement incident to the divorce covers both alimony payments to the payee spouse and child support payments, those periodic payments are deductible by the payor spouse, and taxable to the payee spouse, unless the terms of the decree, instrument, or agreement fix an amount for the support of the minor children of the former spouses. See sec. 71(b);[6] Commissioner v. Lester, 366

---

[5]SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) General Rule.--

(1) Decree of Divorce or Separate Maintenance.–If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

[6]SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(continued...)

U.S. 299 (1961). The amount of child support must be fixed "in terms of an amount of money or a part of the payment" in order for it to be excludable from the payee spouse's income and nondeductible by the payor spouse. Sec. 71(b). The statutory requirement is strict and carefully worded.

In Commissioner v. Lester, supra, the Supreme Court held that periodic payments made by a husband to his divorced wife pursuant to a written agreement entered into by them and approved by the divorce court were deductible by the husband, as alimony, and includable in the wife's gross income where an amount or portion of the periodic payments was not specifically earmarked as payable for the support of the children.[7]

---

[6](...continued)

> (b) Payments to Support Minor Children.--Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support.

[7]For divorce or separation agreements executed after Dec. 31, 1984, Congress overruled Commissioner v. Lester, 366 U.S. 299 (1961), in that the amount by which support is reduced upon contingencies involving a child is treated as "fixed" as child support. See sec. 71(c), as amended by DEFRA sec. 422(a). The aforesaid is also true with respect to divorce or separation instruments (as defined in sec. 71(b)(2), as amended) executed before Jan. 1, 1985, but modified on or after that date if the modification expressly provides that the amendments to sec. 71

(continued...)

In this case, the divorce judgment related to petitioner's divorce from Ms. Eads provides for unallocated payments of "family support" from petitioner to Ms. Eads. In Wisconsin an award of "family support" includes both child support and maintenance (i.e., alimony). See Wis. Stat. sec. 767.261 (1999). The divorce judgment did not designate how much of the "family support" award was for maintenance and how much was for child support. The divorce judgment contains no provision reducing the "family support" payments if a contingency related to the children occurs. Finally, the divorce judgment specifically states that the "family support" payments are "taxable" to Ms. Eads and "tax deductible" by petitioner on "their respective federal and state income tax returns." Accordingly, under Lester v. Commissioner, supra, Ms. Eads was required to include petitioner's payments in her gross income during the years at issue, and petitioner is entitled to a deduction for those payments under section 215.

## Ms. Tang

Section 215[8] provides for a deduction for an amount paid by a taxpayer to a former spouse if the former spouse is required to

---

[7](...continued)
apply to that modification.

[8]Since petitioner and Ms. Tang divorced in May 1989, we must apply secs. 71 and 215 as amended by DEFRA sec. 422(a) and (b), respectively.

include these amounts in gross income under section 71. Therefore, to demonstrate that a cash payment is deductible under section 215, a taxpayer must prove, inter alia, that the payment was made pursuant to a written divorce or separation instrument that did not designate the payment as not includable in the payee spouse's gross income under section 71. See sec. 71(b)(1)(A) and (B).

Petitioner was required to pay Ms. Tang $400 per month as "family support". Although we would ordinarily review the divorce instruments and other documents to determine whether the payments made by petitioner to Ms. Tang were alimony, petitioner did not provide us with divorce instruments or other documents, such as Ms. Tang's Federal income tax returns during the years in issue, to prove that Ms. Tang was required to include the "family support" payments as income pursuant to section 71. In addition, petitioner did not call Ms. Tang to testify. Accordingly, petitioner is not allowed a deduction for the "family support" payments to Ms. Tang.

Issue 2. Whether Petitioner May Deduct Various Schedule C Expenses

Petitioner claims the following expenses related to his consulting business as Schedule C, Profit and Loss From Business, deductions:

|                          | 1992    | 1993    | 1994    | 1995   |
|--------------------------|---------|---------|---------|--------|
| Home office expense:     |         |         |         |        |
|     Rent | $1,080 | $1,080 | $1,305 | -- |
|     Utilities | 297 | 315 | 333 | -- |
|     Telephone | -- | -- | 100 | $720 |
|     Office supplies | 200 | 400 | 1,120 | 100 |
| Car and truck expense    | 3,500   | 4,002   | 2,850   | 2,108  |
| Travel                   | 120     | 180     | --      | --     |
| Meals and entertainment  | 640     | 960     | 425     | 300    |

Home Office Expenses

Section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business.  Section 280A generally prohibits the deduction of otherwise allowable expenses with respect to the use of an individual taxpayer's home.  Section 280A(c)(1) provides a narrow exception to the disallowance of home office deductions where a taxpayer can establish that a portion of the home is used exclusively on a regular basis as: (1) The taxpayer's principal place of business,[9] or (2) a place of business which is used by clients or customers in meeting or dealing with the taxpayer in the normal course of business.

---

[9]For home office expenses incurred in taxable years after Dec. 31, 1998, Congress overruled Commissioner v. Soliman, 506 U.S. 168 (1993), in that the term "principal place of business" now includes a place of business used by the taxpayer to perform administrative or management activities related to the taxpayer's trade or business if there is no other fixed location of the taxpayer's trade or business where substantial administrative or management activities are undertaken.  See sec. 280A(c), as amended by the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 932(a), 111 Stat. 788, 881.

We conclude that petitioner did not meet his burden of proof with respect to his home office deductions. Petitioner operated his consulting business out of a garage attached to his residence. Where a taxpayer's business is conducted in part in the taxpayer's residence and in part at another location, the following two primary factors are considered in determining whether the home office qualifies under section 280A(c)(1)(A) as the taxpayer's principal place of business: (1) The relative importance of the functions or activities performed at each business location, and (2) the amount of time spent at each location. See Commissioner v. Soliman, 506 U.S. 168, 175-177 (1993).

Whether the functions or activities performed at the home office are necessary to the business is relevant but not controlling, and the location at which goods and services are delivered to customers generally will be regarded as an important indicator of the principal place of a taxpayer's business, which must be given great weight and is a principal consideration in most cases. See id. at 175, 176. The relative importance of business activities engaged in at the home office may be substantially outweighed by business activities engaged in at another location. The Supreme Court has explained:

> If the nature of the business requires that its services are rendered or its goods are delivered at a facility with unique or special characteristics, this is a further and weighty consideration in finding that

it is the delivery point or facility, not the
taxpayer's residence, where the most important
functions of the business are undertaken. [Id. at
176.]

In this case, petitioner provided no evidence as to how many
hours he worked at home compared to hours he visited clients'
business sites. Although he presumably kept records, made
telephone calls, and perhaps did some drafting at his home
office, this evidence is insufficient to allow us to determine
whether petitioner performed most or the most important of his
consulting services in his attached garage or at his clients'
business sites. Accordingly, in the absence of proving that his
residence was his "principal place of business", petitioner is
not entitled to deductions for the home office expenses.

Automobile Expenses

For each year in issue, petitioner claims expenses for
mileage associated with driving his automobile from his residence
to various client locations while pursuing his consulting
business. Respondent disallowed all of petitioner's claimed
expenses.

It is well settled that, as a general rule, the expenses of
traveling between one's home and his place of business or
employment constitute commuting expenses which are nondeductible,
personal expenses. See sec. 262; Fausner v. Commissioner, 413
U.S. 838 (1973); Commissioner v. Flowers, 326 U.S. 465 (1946);

Feistman v. Commissioner, 63 T.C. 129 (1974); Sullivan v. Commissioner, 1 B.T.A. 93 (1924).

This Court has previously held that a taxpayer's cost of transportation between his residence and local job sites may be deductible if his residence serves as his "principal place of business" and the travel is in the nature of normal and deductible business travel. See Wisconsin Psychiatric Servs., Ltd. v. Commissioner, 76 T.C. 839, 849 (1981); Curphey v. Commissioner, 73 T.C. 766, 777-778 (1980); Heuer v. Commissioner, 32 T.C. 947, 953 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960).

In Walker v. Commissioner, 101 T.C. 537 (1993), where the taxpayer's residence was considered his "regular" place of business rather than his "principal" place of business, the taxpayer was allowed to deduct transportation expenses incurred between his residence and local, temporary job sites. However, as we stated in Strohmaier v. Commissioner, 113 T.C. 106, 114 (1999):

> the conclusion in Walker was based on a concession of the issue by the Commissioner based on Rev. Rul 90-23, 1990-1 C.B. 28. This revenue ruling has subsequently been amended to reflect existing case law as articulated above. See Rev. Rul. 94-47, 1994-2 C.B. 18.

Accordingly, to be entitled to deduct automobile expenses, petitioner must prove that his residence was used as his "principal place of business". Since petitioner was unable to do

so, it follows that the mileage expenses for each year are nondeductible commuting expenses.

Travel, Meals, and Entertainment

For 1992 and 1993, petitioner claims $120 and $180, respectively, for travel expenses, and $640 and $960, respectively, for meals and entertainment expenses.  For 1994 and 1995, petitioner claims $425 and $300, respectively, for meals and entertainment expenses.  Respondent disallowed all of petitioner's claimed expenses.

A taxpayer is required under section 274(d) to substantiate travel, meals, and entertainment expenses by either adequate records or sufficient evidence corroborating the taxpayer's own statement as to:  (1) The amount of the expense, (2) the time and place the expense was incurred, (3) the business purpose of the expense, and (4) the business relationship to the taxpayer of each expense incurred.  In the absence of evidence meeting these strict substantiation requirements, deductions for travel, meals, and entertainment expenses are not allowed.  See Whalley v. Commissioner, T.C. Memo. 1996-533; sec. 1.274-5T(b)(4), Temporary Income Tax Regs., 50 Fed. Reg. 46015 (Nov. 6, 1985).

Other than his oral testimony, petitioner did not provide substantiation of his expenses for travel, meals, and entertainment.  Accordingly, petitioner has failed to meet the

requirements of section 274(d), and we, therefore, sustain respondent's determination for the taxable years in issue.

Issue 3.  Whether Petitioner Is Entitled To Claim Additional Exemptions for His Spouse and Her Two Daughters for Taxable Years 1993 Through 1995

1993

In 1993, petitioner was engaged to be married to the woman who would become his wife in May 1994.  Because of the support he purportedly provided to his fiancee and her two daughters, petitioner claims that he is entitled to additional dependency exemptions in 1993.  Respondent did not allow additional dependency exemptions for petitioner's fiancee and her daughters.

Section 151(c) allows a taxpayer, subject to certain requirements, a deduction for a personal exemption for each of the taxpayer's dependents as defined in section 152.  A dependent is defined as an individual over half of whose total support is received from the taxpayer, and who must either be related to the taxpayer in one of the ways enumerated in section 152(a)(1) through (8) or be a member of the taxpayer's household within the meaning of section 152(a)(9).  See sec. 152(a).

In 1993, petitioner was not related to his fiancee or her two daughters by blood or marriage, nor was he their adoptive or foster father.  Accordingly, to claim his fiancee and her daughters as dependents in 1993, petitioner must establish, inter

alia, that these individuals were members of petitioner's household within the meaning of section 152(a)(9).

Section 1.152-1(b), Income Tax Regs., provides that section 152(a)(9) applies to any individual who lived with the taxpayer and was a member of the taxpayer's household during the entire taxable year of the taxpayer. Petitioner offered no evidence that his fiancee and her daughters were members of his household or that their principal place of abode was his home throughout 1993. Accordingly, petitioner is not entitled to claim his fiancee and her daughters as dependents in 1993.

### 1994 and 1995

Petitioner married his fiancee in May 1994 and was married to her at the end of taxable years 1994 and 1995. For 1994 and 1995, petitioner claims an exemption for his spouse, as well as additional exemptions for both of his stepdaughters. Respondent denied the exemptions.

Section 151(b) provides that a taxpayer may take an exemption for a spouse if the taxpayer and his spouse did not file a joint return, the spouse had no gross income for the tax year in question, and the spouse was not a dependent of any other person. Petitioner and his wife did not file joint returns for taxable years 1994 and 1995. However, the record does not show whether petitioner's spouse had any gross income for either 1994 or 1995 or whether any other person could claim her as a

dependent for either year.  We therefore sustain respondent's determination that petitioner is not entitled to an additional exemption for his spouse for taxable years 1994 and 1995.

To claim additional exemptions for his stepdaughters, petitioner must prove that he provided more than one-half of their total support in 1994 and 1995.  See sec. 152(a)(2).  In applying the support test, we evaluate the amount of support furnished by the taxpayer as compared to the total amount of support received by the claimed dependent from all sources.  See Turecamo v. Commissioner, 554 F.2d 564, 569 (2d Cir. 1977), affg. 64 T.C. 720 (1975); sec. 1.152-1(a)(2)(i), Income Tax Regs.  In other words, in order to establish that the taxpayer provided more than one-half of the claimed dependent's support, the taxpayer must first show, by competent evidence, the total amount of support received by the claimed dependent from all sources during the year in issue.  Otherwise, the taxpayer cannot be said to have established that he or she provided more than one-half of the support for the claimed dependent.  See, e.g., Blanco v. Commissioner, 56 T.C. 512, 514-515 (1971); Seraydar v. Commissioner, 50 T.C. 756, 760 (1968); Stafford v. Commissioner, 46 T.C. 515, 518 (1966).

Petitioner presented no evidence that he provided more than one-half of the support for his stepdaughters during taxable years 1994 and 1995.  Accordingly, petitioner's claim to

additional dependency exemptions for his stepdaughters for taxable years 1994 and 1995 is denied.

Issue 4.  Whether Petitioner Is Entitled to Head of Household Filing Status in 1993 and Married Filing Joint Return Filing Status in 1994 and 1995

1993

Petitioner claimed at trial that he was entitled to head-of-household filing status in 1993.  Respondent contends that petitioner's filing status in 1993 was "single".

In order to qualify for head-of-household filing status, petitioner must satisfy the requirements of section 2(b). Pursuant to that section, and as relevant herein, an individual qualifies as a head of household if the individual is not married at the close of the taxable year and maintains as his home a household that constitutes for more than one-half of the taxable year the principal place of abode of an individual who qualifies as the taxpayer's dependent within the meaning of section 151. See sec. 2(b)(1)(A)(ii).  However, a taxpayer is not considered to be a head of household by reason of an individual who would not be a dependent for the taxable year but for section 152(a)(9) (i.e., an individual not related by blood or marriage who is a member of the taxpayer's household).  See sec. 2(b)(3)(B)(i).

Since petitioner is not entitled to dependency exemptions for his fiancee and her two daughters during 1993, he does not qualify as a head of household.  Even if petitioner were entitled

to the dependency exemptions under section 152(a)(9), he would still not qualify, as a matter of law, as a head of household because of the limitation set forth in section 2(b)(3)(B)(i). Accordingly, petitioner is not entitled to head-of-household filing status but rather must use "single" filing status for taxable year 1993.

### 1994 and 1995

For taxable years 1994 and 1995, petitioner claims that he is entitled to married filing joint return status. In the notice of deficiency, respondent determined that petitioner's filing status was "married filing separately".

Section 1(a) provides that the filing status married filing joint return applies only to "every married individual * * * who makes a single return jointly with his spouse under section 6013". From this language, it is clear that married taxpayers who fail to file returns are not entitled to married filing joint return tax rates. See Martinez v. Commissioner, T.C. Memo. 1998-199, affd. 198 F.3d 242 (5th Cir. 1999); Collins v. Commissioner, T.C. Memo. 1994-409; Ebert v. Commissioner, T.C. Memo. 1991-629, affd. without published opinion 986 F.2d 1427 (10th Cir. 1993); Hess v. Commissioner, T.C. Memo. 1989-167; see also Phillips v. Commissioner, 86 T.C. 433, 441 n.7 (1986), affd. in part and revd. in part on another ground 851 F.2d 1492 (D.C. Cir. 1988). The parties stipulated that petitioner failed to file returns

during the years in issue. Moreover, petitioner testified that his wife has not indicated any desire to file a joint return with him. We therefore sustain respondent's determination that petitioner's filing status is "married filing separately" for taxable years 1994 and 1995.

Issue 5. Failure To Timely File Tax Return

Petitioner admits he did not file tax returns for any of the years in issue and that he has income tax liability. Section 6651(a) imposes an addition to tax for failure to timely file a return, unless the taxpayer establishes: (1) The failure did not result from willful neglect; and (2) the failure was due to reasonable cause. See United States v. Boyle, 469 U.S. 241, 245-246 (1985). Petitioner bears the burden of proof on this issue. See Rule 142(a); Baldwin v. Commissioner, 84 T.C. 859, 870 (1985). Petitioner failed to prove reasonable cause for his failure to file.

Respondent's computation of the addition to tax in the notice of deficiency does take into consideration petitioner's withholding tax credits, as is required by section 6651(b)(1). See sec. 301.6651-1(d)(1), Proced. & Admin. Regs. Accordingly, the addition to tax for failure to file returns under section 6651(a), as it will be modified in a Rule 155 computation, is sustained.

Issue 6.  Failure To Pay Estimated Income Tax

Respondent determined that petitioner was liable for the addition to tax under section 6654(a) for failure to pay estimated tax for the years in issue.  Where payments of tax, either through withholding or by making estimated quarterly tax payments during the course of the year, do not equal the percentage of total liability required under the statute, imposition of the addition to tax under section 6654(a) is automatic, unless petitioner shows that one of the statutory exceptions applies.  See Niedringhaus v. Commissioner, 99 T.C. 202, 222 (1992); Habersham-Bey v. Commissioner, 78 T.C. 304, 319-320 (1982); Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).  None of the exceptions applies.  We therefore sustain respondent on this issue.

Decision will be entered

under Rule 155.