ALTON J. WILLIAMS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Williams v. Commissioner
Docket No. 11290-92
United States Tax Court
T.C. Memo 1994-63; 1994 Tax Ct. Memo LEXIS 69; 67 T.C.M. (CCH) 2185; February 22, 1994, Filed *69 Decision will be entered for respondent. Alton J. Williams, pro se. For respondent: Linda C. Grobe. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioner's Federal income taxes for taxable years 1986, 1987, 1988, and 1989, in the amounts of $ 2,004, $ 1,155, $ 2,310, and $ 3,706, respectively. Respondent also determined an addition to tax under section 6651(a)(1) for taxable year 1987 in the amount of $ 100. The issues for decision for each of the taxable years are: (1) Whether petitioner is entitled to Schedule C returns and allowances, cost of goods sold, and deductions in excess of the amounts allowed by respondent; (2) whether petitioner is entitled to deductions for a home office; (3) whether petitioner *70 is entitled to claim a dependency exemption for his son; (4) whether petitioner is entitled to compute his taxes using the rate for head of household for taxable year 1989; and (5) whether petitioner is liable for the addition to tax under section 6651(a)(1) for taxable year 1987. Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. Petitioner resided at Chicago, Illinois, when his petition was filed. Petitioner received a B.A. degree from the University of Illinois at Urbana and an M.A. degree from Chicago State University. During the taxable years at issue, petitioner was employed by the Chicago Board of Education as an elementary school teacher. In addition to his full-time employment as a teacher, petitioner was engaged in the business of buying and selling new and used books. Returns and Allowances, Cost of Goods Sold, and Deductions
On Schedule C attached to his Federal income tax return for each taxable year, petitioner reported gross income from his business activity and reduced this amount by returns and allowances, cost of goods *71 sold, and business deductions. Respondent determined that petitioner had not substantiated, in full, the amounts claimed on his Schedules C. In the notice of deficiency, respondent disallowed all of the claimed returns and allowances, and a portion of the cost of goods sold and deductions. For each taxable year, the respective amounts claimed by petitioner in each category and disallowed by respondent in the notice of deficiency are as follows: Claimed on
Disallowed
Amount
1986
Schedule C
in Notice In Dispute
Returns and allowances
$    320
$   320
$   320
Cost of goods sold
3,000
1,500
1,500
Deductions
12,620
7,738
7,738
Claimed on
Disallowed
Amount
1987
Schedule C
in Notice In Dispute
Returns and allowances
200
200
200
Cost of goods sold
2,800
1,400
1,400
Deductions
11,925
6,094
6,094
Claimed on
Disallowed
Amount
1988
Schedule C
in Notice In Dispute
Returns and allowances
200
200
200
Cost of goods sold
3,800
1,900
1,900
Deductions
15,580
10,012
10,012
Claimed on
Disallowed
Amount
1989
Schedule C
in Notice In Dispute
Returns and allowances
500
500
500
Cost of goods sold
3,900
1,950
1,950
Deductions
15,550
11,020
11,020
*72 We begin by noting that deductions are strictly a matter of legislative grace, and a taxpayer has the burden of establishing that he or she is entitled to any deduction claimed on the return. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933). Generally, taxpayers are required to substantiate claimed deductions and credits by maintaining some type of records. See sec. 1.6001-1(c), Income Tax Regs. Under certain circumstances, where a taxpayer has no records to substantiate claimed deductions, we are permitted to estimate expenses when we are convinced from the record that the taxpayer has incurred such expenses. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). However, in order to make an estimation, "there [must] be sufficient evidence to satisfy the trier that at least the amount allowed in the estimate was in fact spent or incurred for the stated purpose". Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). *73 Until the trier has that assurance from the record, relief to the taxpayer would be "unguided largesse". Id.; Cohan v. Commissioner, supra at 544; accord Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Petitioner argues that although he cannot substantiate all of the items claimed on his Schedules C, the lack of documentation should not be "fatal". As a consequence, based on his testimony, petitioner contends that he should be allowed all the returns and allowances, cost of goods sold, and deductions that respondent disallowed. This Court is not bound to accept the unverified, undocumented testimony of petitioner. See Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). We stress that in order for this Court to apply the rationale of Cohan v. Commissioner, supra, to any particular disallowed expenditure, there must be sufficient evidence to permit us to make an estimation. Williams v. United States, supra.Self-serving, vague, and *74 undocumented testimony is insufficient. Other than his own testimony, petitioner presented no evidence to support his contention that he is entitled to amounts in excess of the amounts allowed by respondent for returns and allowances, cost of goods sold, and deductions. Petitioner explained that some of his business records had been lost when he was evicted from his rented bookstore location, but he also testified that "a receipt is something I never thought I would actually need. So when I put gas in the car, I paid for the gas, but I didn't get receipts because I really didn't anticipate that this day would come." The amounts claimed by petitioner on his Schedules C appear in most instances to be estimates. For example, on the 1986 Schedule C, petitioner claimed deductions of $ 800 for advertising, $ 800 for car and truck expenses, $ 200 for dues and publications, $ 200 for laundry and dry cleaning, $ 280 for legal and professional services, $ 4,000 for rent on business property, $ 1,000 for repairs, $ 1,200 for supplies, $ 800 for travel and entertainment, and $ 2,500 for utilities and telephone. The deductions claimed for the other taxable years are similarly set forth in *75 round numbers. [2] Further, some of the items deducted by petitioner, such as laundry and dry cleaning expenses for maintaining clothing suitable for everyday street wear and depletion for books in inventory that were out of date, would not be deductible as claimed, even if properly substantiated as to amount. Sec. 262; sec. 611 (allowance for depletion applies to mines, oil and gas wells, other natural deposits, and timber); Dawkins v. Commissioner, T.C. Memo. 1991-225 (laundry expense for clothing suitable for everyday street wear not allowable).
*76 In sum, petitioner's testimony at trial consisted primarily of a restatement of the estimates shown on the returns. As such, it was general, vague, and lacking in specificity. Respondent allowed reasonable amounts for deductible expenses and cost of goods sold considering petitioner's lack of documentation. On this record, respondent's determinations with respect to the Schedule C returns and allowances, cost of goods sold, and deductions are sustained for each year. Deduction for Home Office
At trial, petitioner argued that a portion of the amounts he deducted on Schedules C as "rent on business property" should be allowed as deductions for a home office. Petitioner deducted expenses for rent for 1986, 1987, 1988, and 1989 in the amounts of $ 4,000, $ 3,600, $ 3,600, and $ 4,500, respectively. Of these amounts, respondent allowed $ 2,100 for 1986, and $ 3,600 for each of the years 1987, 1988, and 1989, the amounts substantiated by petitioner for rental of the bookstore premises. On the 1986 and 1987 Schedules C attached to his returns, petitioner indicated that he deducted no expenses for an office in his home. Petitioner failed to answer the question concerning whether *77 he had claimed a deduction for a home office on the 1988 and 1989 Schedules C. Section 280A, in general, denies deductions with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. Section 280A(c) permits the deduction of expenses allocable to a portion of the dwelling unit which is exclusively used on a regular basis as "the principal place of business" for any trade or business of the taxpayer. Sec. 280A(c)(1)(A). In deciding this case, we must employ the definition of "principal place of business" put forth in Commissioner v. Soliman, 506 U.S.    ,    , 113 S. Ct. 701, 703 (1993). The term "principal place of business" means not merely an important or necessary place of business, but the "most important, consequential, or influential" one. Petitioner stored some books at home, but did not sell books from his home. Petitioner rented separate commercial space for his bookstore beginning in July of 1986, and continuing until he was evicted sometime in 1989. During the time that petitioner did not have rented store space, he sold books on Saturdays from a table set up at Operation *78 PUSH [3] meetings. On this record, we find that petitioner's home office was not his principal place of business. Accordingly, we hold that petitioner is not entitled to claim deductions for a home office for any of the taxable years at issue. [4]
Exemption for Son
Petitioner has one son, Alton J. Williams II. Petitioner did not claim an exemption for his son on any of his tax returns for taxable years 1986, through and including 1989, but at trial contended that he should be allowed a dependency exemption for his son for each year. Petitioner's son was born October 6, 1969, and he resided with petitioner during the years at issue. In September 1986, petitioner's son began attending the University of Illinois. While *79 at college, petitioner's son lived in a dormitory and returned to petitioner's home during the summer. During the taxable years at issue, petitioner's son worked part time, and during 1987, 1988 and 1989 he qualified for student loans and received Pell grants while attending the University of Illinois. Section 151(c)(1) provides for an exemption for each dependent (as defined in section 152): (A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than the exemption amount, or (B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student who has not attained the age of 24 at the close of such calendar year.
The definition of "dependent" in section 152(a) includes a son of the taxpayer "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated * * * as received from the taxpayer)". To establish his entitlement to a dependency exemption for his son, therefore, petitioner must establish that he provided over half of *80 his son's support in each year. To carry his burden of proof, petitioner must not only show how much he contributed to his son's support each year, but also must prove the total amount of support received by his son from all sources, including the son's earnings and loans. McCauley v. Commissioner, 56 T.C. 48, 50 (1971). Petitioner did not know how much his son earned or received from loans in any of the years at issue, and did not know for any of the years whether his son filed tax returns claiming an exemption for himself. Further, petitioner's testimony concerning the amounts he contributed to his son's support in each year was vague and generally undocumented. Finally, petitioner's explanation that he did not claim an exemption for his son on his returns because he did not think he needed an additional exemption is not credible since each of petitioner's tax returns reflected taxes due that would have been reduced by an exemption for his son. We hold that petitioner has not shown that he is entitled to a dependency exemption for his son for any taxable year before the Court. Head of Household
On his 1989 tax return, petitioner claimed *81 "head of household" filing status, listing his son, Alton J. Williams II, as a qualifying person who was his child, but not his dependent. Respondent determined that petitioner did not qualify as a head of household for 1989. Petitioner was married and living with his wife in 1989. He testified that his wife filed a separate return for that year. With exceptions not applicable here, an individual is considered a "head of household" only if such person is not married at the close of his taxable year. Sec. 2(b)(1). Petitioner therefore does not qualify as a head of household for taxable year 1989. Respondent's determination on this issue is sustained. Addition to Tax
Respondent determined that petitioner is liable for an addition to tax under section 6651(a)(1) for taxable year 1987. The parties stipulated that petitioner's 1987 tax return was filed with the Internal Revenue Service on December 12, 1988. Petitioner offered no evidence of reasonable cause for the late filing of his 1987 tax return. Respondent's determination that petitioner is liable for the addition to tax *82 is sustained. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The Schedules C for 1987 and 1988 are particularly notable since it appears that petitioner, in preparing his returns, altered some of the amounts initially shown by adding the digit "1" in black ink before figures in blue ink. Thus, the amounts for advertising expense were changed from $ 500.00 to $ 1,500 and bad debts from $ 150 to $ 1,150 in 1987. Similarly, the amounts shown on the 1988 Schedule C for legal and professional expenses were changed from $ 200 to $ 1,200 and repairs from $ 490 to $ 1,490. The resulting increases in the totals on both schedules are shown in black ink beside the original, marked-through blue ink totals.↩
3. Petitioner testified that Operation PUSH (People United To Serve Humanity) is an organization founded by the Reverend Jesse Jackson.↩
4. We note that for taxable years 1987 and 1988, respondent allowed as a business expense the full amount claimed by petitioner as rent on his Schedules C.↩