T.C. Memo. 1995-566


UNITED STATES TAX COURT


WAYNE AND JUNE ELLEN HAIRSTON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 23593-92, 27023-93.    Filed November 28, 1995.


Wayne Hairston and June Ellen Hairston, pro sese.

<u>Charles Pillitteri</u>, for respondent.


MEMORANDUM OPINION


ARMEN, <u>Special Trial Judge</u>:  These consolidated cases were
heard pursuant to the provisions of section 7443A(b)(3) and Rules
180, 181, and 182.[1]

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the taxable years in
(continued...)

Respondent determined deficiencies in petitioners' Federal income taxes for the taxable years 1988, 1989, and 1990, as well as an addition to tax and a penalty for negligence, as follows:

| Year | Deficiency | Addition to Tax Sec. 6653(a)(1) | Penalty Sec. 6662(a) |
|---|---|---|---|
| 1988 | $5,303 | $265 | --- |
| 1989 | 2,788 | --- | $558 |
| 1990 | 2,965 | --- | 593 |

In addition to the foregoing, respondent asserted, in her answer, an addition to tax for 1990 in the amount of $741 under section 6651(a)(1) for failure to file a timely Federal income tax return.

After concessions by the parties,[2] the issues for decision are as follows:

(1) Whether petitioners are liable for self-employment tax for the taxable years 1988, 1989, and 1990;

(2) whether petitioners are entitled to net operating loss deductions for the taxable years 1988, 1989, and 1990;

---

[1](...continued)
issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioners concede that they are not entitled to deduct cable and news expenses for the taxable year 1990. For the taxable years 1988 and 1989, respondent concedes that, if petitioners do not prove that they are entitled to deduct mortgage interest on Schedule C, then mortgage interest is deductible as an itemized deduction on Schedule A.

(3) whether petitioners are entitled to deduct on their Schedule C for the taxable years 1988, 1989, and 1990, various expenses in excess of those allowed by respondent;

(4) whether petitioners are liable for the addition to tax for negligence under section 6653(a)(1) for 1988;

(5) whether petitioners are liable for an accuracy-related penalty for negligence under section 6662(a) for 1989 and 1990; and

(6) whether petitioners are liable for an addition to tax for late filing under section 6651(a)(1) for 1990.

For simplicity and clarity, we will first set forth the relevant background facts and general legal principles; we will then combine additional findings of fact and opinion for each issue.

## Background Facts

Some of the facts have been stipulated, and they are so found. Petitioners resided in Dothan, Alabama, at the time that their petition was filed with the Court.

Petitioner Wayne Hairston (petitioner) received both a bachelor's degree in psychology and a graduate degree in Christian counseling from Liberty University. Petitioner has also completed undergraduate religion courses and graduate theology courses. In addition to his formal education, petitioner is an ordained minister. Petitioner was ordained by the Body of Christ Church on May 17, 1987. The Body of Christ

Church headquarters is located in Nashville, Tennessee. Subsequently, petitioner was licensed as a minister by the Alabama District of the Council of the Assemblies of God of Montgomery, Alabama. Petitioner is qualified to perform sacraments, to baptize or christen, and to officiate at marriage ceremonies and burials.

Petitioners believe that they were "called" to Dothan, Alabama, to act in their capacity as Christian or pastoral counselors. Accordingly, sometime in 1987, petitioners moved to Dothan, Alabama, and established the Body of Christ Church of Dothan, Alabama.[3] Petitioners rented residences temporarily while looking for a permanent residence and an office location. Petitioners ultimately purchased a permanent residence in the name of the Body of Christ Church of Dothan, Alabama. Petitioners actually made the mortgage payments on the residence and deducted the mortgage interest on Schedule C of their individual income tax returns for the taxable years in issue.

Sometime in 1987 petitioners rented an office in downtown Dothan, Alabama (the "downtown office") for the counseling business. The downtown office rented by petitioners consists of a counseling office, waiting room, reception area, and a bathroom for the clients. Petitioners believe that any item that makes a

---

[3] At the time of the trial, the Body of Christ Church of Dothan, Alabama, consisted only of petitioners and was not an incorporated entity.

counseling setting look like a business office is detrimental to the counseling session. Accordingly, petitioners use the downtown office to meet with and counsel clients, but do not research or attend to office work at the downtown location. Instead, petitioners use two rooms in their personal residence to store their books and office equipment and to prepare for counseling sessions. Petitioners maintain that approximately 20 percent of their home was used as a home office during the years in issue.

Petitioners started operating the Christian counseling center sometime in 1988. In addition to counseling, petitioner occasionally preaches on Sundays, teaches in church settings, and administers sacraments. However, the only service for which petitioner accepts remuneration is counseling.

Petitioners' Federal and State income tax returns for taxable years 1988 and 1989 were audited by both the Internal Revenue Service and the Alabama State Bureau of Revenue.

Petitioners' 1990 Federal income tax return, which was due on October 15, 1991, pursuant to extensions of time to file, was filed on March 3, 1992.

General Legal Principles

We begin by noting that, as a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111,

115 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra. This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

If the record provides sufficient evidence that a taxpayer has incurred a deductible expense, but the taxpayer is unable to adequately substantiate the amount of the deduction to which he or she is otherwise entitled, the Court may, under certain circumstances, estimate the amount of such expense and allow the deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, in order for the Court to estimate the amount of an expense, we must have some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Issue 1. Self-Employment Taxes

Section 1401 imposes a tax on an individual's self-employment income, which is based on the "net earnings from self-employment" derived by the individual during the taxable year. Sec. 1402(b). Net earnings from self-employment are the gross income derived by the individual from any trade or business

carried on by that individual, less the deductions attributable to that trade or business. Sec. 1402(a). Section 1402(c)(4) and the final sentence of section 1402(c), however, provide that the term "trade or business" does not include "the performance of service by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry" if an exemption under section 1402(e) is in effect.

Section 1402(e) provides specific requirements for a minister to obtain an exemption from self-employment tax. A minister seeking the exemption must file an application stating that he is opposed, because of religious principles or conscientious beliefs, to the acceptance of certain types of public insurance, such as that provided by the Social Security Act, attributable to his or her services as a minister. Sec. 1402(e)(1). The application must be filed on or before the due date of the return for the second taxable year in which the taxpayer has $400 or more of self-employment income from the performance of exempted services. Sec. 1402(e)(3). The application deadline is strictly enforced. See Kelly v. Commissioner, T.C. Memo. 1980-37; Engstrom v. Commissioner, T.C. Memo. 1980-41.

Petitioner filed a Form 4361, Application for Exemption from Self Employment Tax, which was received by the Internal Revenue Service on April 17, 1989. Box 3 and line 4 of the Form 4361 identify petitioner as having been ordained by the Assemblies of

God on August 31, 1984.  Further, line 5 states that 1985 and 1986 were the first 2 years in which petitioner had self-employment earnings of at least $400 from services as a minister. The application deadline, based on the information provided, would be April 15, 1987, 2 years prior to the date that petitioner actually filed the application.  On petitioners' Form 4361, respondent placed a check in the box labeled "Disapproved for exemption".  The date beside respondent's representative's signature is May 2, 1989.

In fact, petitioner was ordained by the Body of Christ Church of Nashville, Tennessee, on May 17, 1987.  Based upon petitioners' testimony at trial and on returns filed by petitioners, it appears that 1988 was the first year in which petitioner had self-employment income of $400 or more earned from services as a minister.  Accordingly, the filing deadline for the exemption application would have been on April 15, 1990, 1 year after petitioners filed the application.

For the taxable years 1988, 1989, and 1990, petitioner reported net earnings from self-employment; however, he did not report self-employment tax with respect to those earnings. Instead, for the taxable years 1988 and 1989, petitioner wrote "Exempt Form 4361" on the line of the return relating to self-employment tax.  For the taxable year 1990, petitioner did not enter anything on the line of the return relating to self-employment tax.

Petitioner testified that all of the income reported on Schedule C for each taxable year is income from his "counseling ministry".  Since the exemption applies only with respect to income attributable to services performed by an individual in the individual's capacity as a minister, respondent contends that petitioner does not qualify for the exemption because income attributable to counseling is not income attributable to the practice of a religious ministry.

Although the foregoing matter raises an interesting point of dispute, we do not have to resolve it in this case.  Even if petitioner could prove that income derived from his counseling practice is income derived from a religious ministry, he cannot prove that he is opposed to public insurance as a conscientious or religious principle, as is required by section 1402 in order to qualify for exemption from self-employment tax.

Petitioner's testimony at trial reveals that he is not opposed to public insurance as a "religious issue".  The following exchange illustrates petitioner's beliefs regarding public insurance:

>The Court:     Okay.  And just to go back a couple
>               questions, are you, as an ordained minister,
>               opposed to public insurance?
>
>Mr. Hairston:  Public -- I am sorry?
>
>The Court:     Public insurance?  Was that the reason that
>               you had filed your application for exemption
>               from the self-employment tax?

Mr. Hairston:   No. I am not opposed to the -- to that, as a religious issue, no.

We were advised to -- by our accountant, to file for an exemption with the State, providing the State would allow it.  And we asked the State to allow it, which they did.

Although petitioner signed an exemption application stating that he is opposed to public insurance because of his religious principles, the Court finds petitioner's trial testimony to be more compelling.  The application for exemption contained numerous significant mistakes, including the date that petitioner was ordained and the religious body that ordained petitioner.  It is obvious that petitioner did not carefully review the application.  In view of the significant mistakes made on the application, it is possible that petitioner did not even read the application, including the statement certifying that the applicant is opposed to public insurance, prior to signing the Form 4361.

We hold that petitioner has failed to prove that he is opposed to public insurance as is required by section 1402(e)(1) in order to qualify for exemption from the self-employment tax. Petitioner is therefore liable for self-employment taxes for the taxable years 1988, 1989, and 1990.[4]

---

[4] We note that for the taxable year 1990, petitioners are entitled to deduct from gross income one-half of their self-employment tax liability pursuant to sec. 164(f).

Issue 2.  Net Operating Losses

Petitioners claimed carryforward losses from 1976, 1977, 1980, 1982, 1984, 1985, and 1987 to the taxable years in issue. More specifically, petitioners claimed a net operating loss ("NOL") carryforward in the amount of $45,207 on page 1 of their Form 1040 for 1990.  Through amended returns, petitioners claimed carryforward losses for 1988 and 1989.

As mentioned above, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Accordingly, our first inquiry must be whether petitioners had any net operating losses in taxable years prior to 1988 that they could carry forward to the taxable years in issue, 1988, 1989, and 1990.  Myers v. Commissioner, T.C. Memo. 1995-329.  Regarding this matter, the record contains joint exhibits consisting of the income tax returns filed by petitioners for each of the taxable years 1975 through 1990.  The record also contains exhibits from petitioners showing the NOL schedule compiled by petitioners' tax preparer. However, no one testified as to the claimed net operating losses incurred in the years prior to 1988, and the record includes no proof that such losses were in fact incurred or that carryovers were available as deductions in any of the years in issue.

Based on the inadequate record thus presented, we are unable to find that any net operating losses actually were incurred in

the taxable years prior to 1988, quite aside from whether such losses, if incurred, were allowable to petitioners for tax purposes and may be carried forward and set off against petitioners' income for 1988, 1989, or 1990.  Petitioners' returns, which are in evidence, simply prove that these were the returns that were filed; they are not self-proving as to the truth of their contents.  Halle v. Commissioner, 7 T.C. 245 (1946), affd. 175 F.2d 500 (2d Cir. 1949); Caruso v. Commissioner, T.C. Memo. 1966-190.

There is nothing else in this record, including testimony from any witness, as to the amount and allowability as a deduction of any loss for any taxable year prior to 1988.  We hold that petitioners have not shown that they incurred a net operating loss in any taxable year prior to 1988 that could properly be carried forward to any taxable year in issue.  On this issue, we must therefore uphold respondent's determination.

Issue 3.  Petitioners' Schedule C Expenses

Section 162(a) generally allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  The regulations promulgated under section 162 clarify that only those ordinary and necessary business expenses "directly connected with or pertaining to the taxpayer's trade or business" may be deducted. Sec. 1.162-1(a), Income Tax Regs.  In addition, under section 262(a) no portion of the expenditures attributable to personal,

living, or family expenses may be deducted, except as otherwise expressly provided in the Code. Furthermore, section 280A narrows the general deductibility rule of section 162 when deductions are claimed for the expenses of an office in the home. Sec. 280A(a).

Section 280A(a) denies deductions with respect to the use of a dwelling unit used by the taxpayer as a residence during the taxable year. Section 280A(c), however, permits the deduction of expenses allocable to a portion of the dwelling unit that is used exclusively and on a regular basis as "the principal place of business" for any trade or business of the taxpayer. Sec. 280A(c)(1)(A). Additionally, items such as taxes and interest are allowable as deductions without regard to the business use of a dwelling. Sec. 280A(b).

We now apply these principles to the various expenses petitioners claimed on Schedule C for the taxable years in issue.

Mortgage Interest Deductions

On their Schedule C, petitioners' claimed deductions for mortgage interest in the amounts of $6,402, $8,442, and $7,939 for 1988, 1989, and 1990, respectively. Respondent concedes that petitioners are entitled to deduct mortgage interest for 1988, 1989, and 1990, but contends that such interest is deductible on Schedule A rather than on Schedule C, as claimed by petitioners. See supra note 2.

Petitioners contend that their personal residence is a parsonage and that the parsonage allowance under section 107 allows them to deduct the mortgage interest on their Schedule C as a business expense. Petitioners' reliance on section 107 is misplaced. On its face, section 107 provides for an exclusion for the rental value of a parsonage furnished to a minister and does not address the deductibility of mortgage interest. It provides no guidance in determining whether the interest is deductible on Schedule A or Schedule C.

As mentioned above, mortgage interest expense is not disallowed by section 280A and may be deducted as an itemized deduction under section 163. See sec. 280A(b). Further, if any part of the interest is an ordinary and necessary business expense within the meaning of section 162, it may be deducted from gross income. See sec. 62(a)(1). Otherwise, at least as relevant herein, mortgage interest may only be deducted from adjusted gross income as an itemized deduction on Schedule A.

Petitioners testified that they used the house both as a residence and as an office for petitioners' counseling business for the taxable years 1988 through 1990. Petitioners also testified that approximately 20 percent of their home was used as an office in the home. We find petitioners' testimony to be credible and supported by the record. Thus, we hold that 20 percent of the mortgage interest paid by petitioners was incurred as an ordinary and necessary expense in carrying on a trade or

business.  Accordingly, the portion of the mortgage interest attributable to petitioners' counseling business is deductible from petitioner's gross income.  Secs. 62(a)(1); 162; 280A(b).  See Stewart v. Commissioner, T.C. Memo. 1987-436 (where taxpayer rented out a bedroom in her residence, a deduction from gross income was allowed for mortgage interest and real estate taxes attributable to the rented portion of her residence).

However, petitioners failed to prove that the remaining portion of the mortgage interest is allocable to a business use of their residence.  Petitioners admit that they used the remaining 80 percent of the house as a personal residence.  Thus, the remaining 80 percent of the mortgage interest is a personal expense that is deductible under section 163.  Petitioners, therefore, must deduct 80 percent of the mortgage interest as an itemized deduction on Schedule A.[5]

Accordingly, we sustain respondent's determination only in part with regard to the mortgage interest issue.

Rent Expense for 1988

---

[5] Petitioners claimed the standard deduction for each of the taxable years in issue.  However, because the Court has only partially sustained respondent's determination with respect to the mortgage interest expense, petitioners' itemized deductions may exceed the standard deduction.  In addition, we note that although petitioners contend, on brief, that they are entitled to medical expenses in the amount of $3,422, for 1990, they failed to introduce any persuasive evidence that they are entitled to a larger deduction than the amount allowed by respondent.  It is in this context that we leave the parties to resolve this matter as part of their Rule 155 computation.

For the taxable year 1988, petitioners claimed a deduction on their Schedule C for rent in the amount of $6,500. Respondent determined that $1,300 of the rent expense was personal and nondeductible under section 262 because it represented a rental payment for petitioners' personal residence.

Petitioners introduced into evidence a copy of the $1,300 check used to pay the rent in question. The notation at the bottom of the check reads "Rent Dec & Jan 103 Salina Ct". Petitioners lived temporarily at 103 Salina Court while they looked for a permanent residence.

Section 262 restricts deductions for personal, family, and living expenses. In this case, petitioners have failed to show the business purpose of the $1,300 rent paid. Petitioners admit that the house located at 103 Salina Court was their personal residence. The rental payment is, therefore, a nondeductible personal, living, or family expense under section 262. See Tyler v. Commissioner, T.C. Memo. 1991-537 (rental expense deduction for taxpayer's personal place of residence was a personal expense disallowed by section 262).

We take note that petitioners, on brief, contend that they used part of the temporary residence at 103 Salina Court to maintain records and do the accounting for the counseling business. This does not alter our analysis. In order for petitioners to deduct any portion of the rent under this set of facts, petitioners must prove that the residence at 103 Salina

Court constituted their principal place of business for purposes of section 280A(c). Petitioners have presented no evidence regarding this issue. Accordingly, we sustain respondent's determination.

Deductions for Utilities and Depreciation for 1988, 1989, and 1990

For the taxable years 1988, 1989, and 1990 petitioners claimed deductions for utilities and depreciation for their downtown office and for the portion of their residence that they used as an office. Respondent disallowed the portion of these deductions attributable to petitioners' home office.

Petitioners may deduct utilities and depreciation attributable to their home office only if their home office was their principal place of business within the meaning of section 280A(c)(1)(A). This matter depends on the specific facts and circumstances of each particular case.

Petitioner used the home office for preparing for counseling sessions. Petitioner did not meet with or counsel clients at the home office and, instead, used the downtown office for that purpose. Petitioner testified that he maintained his counseling books and accounting materials at the home office because the presence of these items in the downtown office would have intimidated the clients.

In deciding whether petitioners are entitled to deductions for utilities and depreciation in excess of those allowed by

respondent, we must apply the definition of "principal place of business" set forth in Commissioner v. Soliman, 506 U.S. 168, ___, 113 S.Ct. 701, 706 (1993). In Soliman, the Supreme Court emphasized two primary considerations in deciding whether a taxpayer may treat a home office as a principal place of business: (1) The amount of time spent at each location, and (2) the relative importance of the activities performed at each location.

In Soliman, the taxpayer, an anesthesiologist, administered anesthesia and treated patients at hospitals. However, he maintained billing records, read medical journals, and prepared presentations and treatments in his home office. The Supreme Court held that the taxpayer was not entitled to a deduction for home office expenses because the taxpayer's office in his home was not his "principal place of business". In so holding, the Court noted that the activities which the taxpayer performed at home were less important to the taxpayer's medical practice than the treatments he provided at the medical facilities. Id. at ___, 113 S. Ct. at 708. The Court stated that "The actual treatment was the essence of the professional service * * *. * * * [and] the actual treatment was the most significant event in the professional transaction." Id.

In analyzing the first factor set forth in Soliman, the relative importance of the activities undertaken at each business location, we should consider whether the functions performed in

the home office are necessary to the business.  See Id. at ___, 113 S. Ct. at 707.  Petitioner maintained all of his records and books in his home office.  Further, petitioner prepared for and reviewed his counseling sessions in his home office.  Although petitioner's activities in his home office were important to his business, petitioner did not introduce any testimony showing that the functions which he performed at his home office were more important than the functions which he performed at his downtown office.  On the contrary, petitioner actually met with and counseled his clients at the downtown office.  Like the taxpayer in Soliman, the actual treatment (counseling) was the essence of petitioner's professional service and was the most significant event in the professional transaction.  Because we find that the services performed in the downtown office were more significant than the activities undertaken in petitioner's home office, this factor weighs heavily in favor of respondent.

We now turn to the second factor set forth in Soliman, the amount of time spent at each location.  Petitioner testified that he spent almost as much time in the home office as the downtown office and that sometimes he spent more time in the home office than in the downtown office.  As approximately equal time was spent at each location, this factor is not helpful in identifying petitioner's principal place of business.

Based upon the evidence presented, we find that petitioner's home office is not his principal place of business for the

counseling ministry.  Accordingly, we sustain respondent's determination with respect to the deductions for utilities and depreciation for the taxable years 1988, 1989, and 1990.

Telephone Expenses for 1988 and 1990

For the taxable year 1988 petitioners deducted "telephone and utility" expenses in the amount of $6,117.  Respondent disallowed $2,141 of the deduction.  For the taxable year 1990 petitioners deducted telephone expenses in the amount of $3,325.  Respondent disallowed $898 of this amount.

The telephone expenses deducted by petitioner for the taxable years 1988 and 1990 included expenses for the office phone in the downtown office, the Yellow Pages advertising, the charges for call forwarding from the business location to the personal residence, and business related, long distance calls made from petitioners' home.  Respondent disallowed the portion of the telephone expenses attributable to petitioners' home office.

Respondent, on brief, contends that petitioners failed to substantiate the telephone expenses, and further, that even if they did so, the expenses are not allowable pursuant to section 280A(a) and Commissioner v. Soliman, supra.  We are persuaded that petitioner incurred some telephone expenses at home in the course of conducting his trade or business as a counselor.  Additionally, respondent's reliance on section 280A(a) is misplaced.  The deductibility of telephone expenses is guided by

section 162(a), not section 280A.[6]  See <u>Green v. Commissioner</u>,
T.C. Memo. 1989-599.

As a general rule, if the record provides sufficient
evidence that the taxpayer has incurred a deductible expense, but
the taxpayer is unable to adequately substantiate the amount of
the deduction to which he or she is otherwise entitled, the Court
may estimate the amount of such expense and allow the deduction
to that extent.  <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d
Cir. 1930).  Based upon the record, we estimate that of the
$2,141 disallowed by respondent for 1988, $200 consisted of
deductible telephone expenses, and of the $898 disallowed by
respondent for 1990, $75 consisted of deductible telephone
expenses.

Accordingly, we sustain respondent's determination with
respect to the telephone expenses only in part.

<u>Insurance Expenses for 1990</u>

Petitioners claimed a deduction for insurance in the amount
of $5,337 for the taxable year 1990.  Respondent disallowed
$4,355 of the claimed deduction.  At trial, petitioners explained
that the insurance deduction includes expenses for automobile
insurance, personal liability insurance on the downtown office,

---

[6] We note that sec. 262(b), effective for 1989 and later
years, disallows a deduction for "basic local telephone service
with respect to the first telephone line" to any residence of the
taxpayer, regardless of any business use of the telephone.  This
section, however, does not apply in this case since petitioners
have not claimed local telephone service expenses.

homeowner's insurance attributable to petitioners' home office, renter's insurance attributable to petitioners' home office, and hazard insurance on petitioners' residence, and mortgage insurance. However, petitioners failed to introduce any evidence showing that they are entitled to a larger deduction than the amount allowed by respondent. Consequently, petitioners have not met their burden of proof, and we sustain respondent with respect to this issue.

### Interest Expenses for 1990

For the taxable year 1990 petitioners deducted "other interest" in the amount of $1,130. Of this amount, respondent disallowed $282. Although petitioners, on brief, explain that the interest deducted is attributable to vehicles used in their business, they failed to introduce any evidence that they are entitled to a larger deduction than the amount allowed by respondent. See Rule 143(b). Consequently, petitioners have not met their burden of proof, and we sustain respondent with respect to this issue.

### Issue 4. Section 6653(a)(1) Addition to Tax for Negligence for 1988

Respondent determined an addition to tax for negligence under section 6653(a)(1) against petitioners for their 1988 taxable year. For that year, section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of the tax required to be shown on a taxpayer's return if any part of that

underpayment is due to negligence or disregard of rules or regulations. Section 6653(a)(3) defines the term "negligence" to include any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. This section also defines the term "disregard" to include any careless, reckless, or intentional disregard. See Neely v. Commissioner, 85 T.C. 934, 947 (1985) (for purposes of section 6653(a), "negligence" is the lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances). Petitioners bear the burden of proof as to the addition to tax for negligence. Rule 142(a); Neely v. Commissioner, supra; Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

Petitioners did not address the issue of negligence at trial. Further, the Court is unable to find, independently, circumstances that would exonerate petitioners from the addition to tax. Petitioner received a graduate degree from college. Further, petitioners submitted Form 4361 without even apparently reading its contents. Accordingly, petitioners have failed to carry their burden of proof, and we therefore sustain respondent's determination with regard to the addition to tax for negligence for 1988.

Issue 5. Section 6662(a) Accuracy-related Penalty for Negligence for 1989 and 1990

Respondent determined an accuracy-related penalty for negligence under section 6662(a) against petitioners for their

1989 and 1990 taxable years. The penalty under section 6662(a) is similar to the addition to tax for negligence under section 6653(a)(1).

Section 6662(a) and (b)(1) provides that if any portion of an underpayment of tax is attributable to negligence or disregard of rules or regulations, then there shall be added to the tax an amount equal to 20 percent of the amount of the underpayment which is so attributable. The term "negligence" includes any failure to make a reasonable attempt to comply with the statute, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Petitioners have the burden of proving that respondent's determination of the penalty is in error. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

At trial petitioners did not address the issue of negligence. As before, we are unable to find, independently, circumstances that would exonerate petitioners from the penalty. Therefore, we conclude that petitioners failed to carry their burden of proof, and we sustain respondent's determination of the penalty for negligence for 1989 and 1990.

<u>Issue 6. Section 6651(a) Addition to Tax for Failure to Timely File for 1990</u>

For the taxable year 1990, petitioners requested two extensions of time within which to file their return that ultimately extended the filing deadline to October 15, 1991.

Petitioners' Federal income tax return for 1990 was received on March 3, 1992. The date set forth opposite each of petitioners' signatures on the return was February 27, 1992.

Section 6651(a)(1) imposes an addition to tax for failure to file a timely return. Generally, the Commissioner's determination is presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Abramo v. Commissioner, 78 T.C. 154, 163 (1982). However, when new matters are pleaded in the answer, the Commissioner bears the burden of proof. Rule 142(a); Ward v. Commissioner, T.C. Memo. 1995-286. Because respondent asserted the delinquency penalty for the first time in her answer, respondent bears the burden of proof with respect to this issue.

At trial, petitioners admitted that they did not file their 1990 return in a timely fashion. Petitioners explained that the reason they did not file timely is that they assumed they were being granted additional time to file because they were involved in both State and Federal audits of their income tax returns for 1988 and 1989.

We have consistently held that a dispute concerning a taxpayer's liability for a prior taxable year does not constitute reasonable cause for failing to timely file a return for the current taxable year. Glowinski v. Commissioner, 25 T.C. 934 (1956), affd. 243 F.2d 635 (D.C. Cir. 1957); Knollwood Memorial Gardens v. Commissioner, 46 T.C. 764 (1966); Madden v.

Commissioner, T.C. Memo. 1980-350.  Accordingly, petitioners'
dispute with the State and Federal taxing authorities concerning
their tax liability for the taxable years 1988 and 1989 does not
constitute reasonable cause for petitioners' failure to file
their 1990 return in an untimely manner.  We therefore sustain
respondent on this issue.

Conclusion

To give effect to our resolution of the disputed issues, as
well as the parties' concessions,

Decisions will be entered
under Rule 155.