T.C. Memo. 2015-139

UNITED STATES TAX COURT

SHERI FLYING HAWK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8793-09.                           Filed August 4, 2015.

Sheri Flying Hawk, pro se.

<u>Elizabeth Wickstrom</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal

income tax for 2006 and 2007 of $3,094 and $36,036, respectively, and accuracy-

related penalties under section 6662(a) of $618.80 and $7,207.20, respectively.[1]

_____

[1]All section references are to the Internal Revenue Code of 1986, as in

(continued...)

[*2]   Following concessions by the parties,[2] the issues for decision are:  (1) whether petitioner is entitled to deductions for the business use of her homes of $7,919 and $9,829 for 2006 and 2007, respectively; (2) whether petitioner is entitled to deduct car and truck expenses for 2006 and 2007 in amounts greater than those respondent allowed; (3) whether petitioner is entitled to deduct on Schedule C, Profit or Loss From Business, "other expenses" of $2,320 for 2006; and (4) whether petitioner is liable for accuracy-related penalties under section 6662(a) for 2006 and 2007.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  Petitioner resided in California at the time she filed her petition.

---

[1](...continued)
effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest dollar.

[2]Petitioner concedes that she had unreported income consisting of $11 in interest and a $110 State tax refund for 2006.  She further concedes that she is not entitled to a $12,000 depreciation deduction for a gravel trailer for 2007.  Respondent concedes that petitioner is entitled to an additional $2,825 of depreciation deductions for 2007.  Petitioner concedes that she is not entitled to a $72,055 deduction for wage expenses for 2007.  Respondent concedes that $69,884 that petitioner reported as gross receipts for 2007 should not be included in her gross income for that year.  Respondent also concedes that petitioner is entitled to a $472 charitable contribution deduction for 2006, $450 of which was claimed on petitioner's Schedule C and disallowed in the notice of deficiency.

**[*3]** <u>Business use of residences</u>

In 2006 and 2007 petitioner was an accountant who provided, among other services, tax return preparation services to her clients. Petitioner had an office in Moss Beach, California (Moss Beach office), throughout 2006 and 2007 which she rented for $715 per month. She claimed, and respondent allowed, deductions for this office rent expense for both years. Petitioner performed 50% of her work from the Moss Beach office in 2006 and 75% in 2007. Additionally, in 2007 petitioner hired temporary assistants for her bookkeeping activities for the business, including reviewing credit card statements covering 2006 and posting the data therein to the appropriate expense accounts of the business. These assistants did their work at the Moss Beach office.

Petitioner also owned a mobile home in Susanville, California (Susanville residence), and a house in Clearlake Oaks,[3] California (Clearlake Oaks residence),

---

[3]Before trial petitioner signed a stipulation to the effect that this house was in nearby Clearlake, California, rather than in Clearlake Oaks. At trial, however, petitioner gave sworn testimony that her house was in Clearlake Oaks and her father's residence was in Clearlake. As will be seen <u>infra</u>, this distinction is important in view of petitioner's claims concerning the business and personal use of her automobile.

We will disregard the stipulation in view of petitioner's testimony. <u>See</u> <u>Jasionowski v. Commissioner</u>, 66 T.C. 312, 318 (1976). We note, however, that this episode reflects a recurrent lack of clarity on petitioner's part with respect to important details--in her discussions with respondent that gave rise to the

(continued...)

[*4] in 2006 and 2007.[4]  During those years she had clients in each location, but she did not use the Susanville residence or the Clearlake Oaks residence for client meetings.  Instead, she met with clients at their places of business or residence and then did some of the accounting work for them at the residences she owned.  During 2006 and 2007 she rented out the Susanville residence to a close friend but also used it herself for occasional overnight occupancy and for storing workpapers and client files.

Petitioner claimed deductions of $7,919 and $9,829 on her Federal income tax returns for 2006 and 2007, respectively, for the business use of her Susanville and Clearlake Oaks residences.  Respondent disallowed the deductions in notices of deficiency issued with respect to 2006 and 2007.

---

[3](...continued)
stipulations and in her trial testimony.  Consequently, we have generally accorded less weight to her testimony than would otherwise be the case.

[4]We find on the basis of the preponderance of the evidence that petitioner used these dwellings for more than 14 days in both 2006 and 2007 for personal purposes, which results in each having been "used * * * as a residence" within the meaning of sec. 280A.  See sec. 280A(d).  For example, petitioner admits in her brief that each dwelling had "personal use areas".

[*5] Business use of vehicles

Petitioner claimed Schedule C deductions for car and truck expenses of $14,246 and $23,117 for 2006 and 2007, respectively. For 2006 respondent allowed an $11,793 deduction as reflecting petitioner's business use of a Ford Thunderbird she owned but disallowed the remaining $2,453. Petitioner calculated the $14,246 deduction for 2006 using the business standard mileage allowance for 32,013 miles which, according to the return, constituted 100% of the vehicle's use in 2006. For 2007 respondent allowed an $8,406 deduction of the $23,117 in car and truck expenses petitioner reported as reflecting business use of the Thunderbird and disallowed the remaining $14,711, including all amounts petitioner reported with respect to a Ford Taurus. Petitioner calculated the $23,117 deduction claimed on the return using the business standard mileage allowance for 26,726 miles she reported as driven for business purposes in the Thunderbird and 18,880 miles she reported as driven for business purposes in a Ford Taurus titled in the name of another individual.[5] According to the return, the

_____

[5]The standard mileage rate for 2007 for business miles was 48.5 cents per mile. Rev. Proc. 2006-49, 2006-2 C.B. 936. The 45,606 in total business miles that petitioner reported on her 2007 return would produce a deduction of $22,119 at the standard mileage rate. The amount petitioner claimed as a deduction on her 2007 Schedule C, however, was $23,117. This discrepancy is not explained in the record.

[*6] business miles reported for the Thunderbird represented 100% of its use in 2007 and those reported for the Taurus represented 90.6% of its use.

The Thunderbird was the only vehicle petitioner owned in 2006 and 2007. Petitioner conceded at trial that at least 5% of her use of the Thunderbird during 2006 and 2007 was for personal purposes including visiting her father in Clearlake (a city near Clearlake Oaks) and taking him to the grocery store. She did not maintain a contemporaneous mileage log, account book, or diary for the Thunderbird for 2006 or 2007.

During 2007 the Taurus was owned and driven by an individual who, according to petitioner, did some tax work for her and provided assistance in servicing other clients of her accounting business during 2007. Petitioner did not issue a Form W-2, Wage and Tax Statement, or a Form 1099-MISC, Miscellaneous Income, to this individual for that year, however. Petitioner did not drive the Taurus, and she did not reimburse this individual for any business miles driven in the Taurus for 2007. Petitioner did not produce a contemporaneous mileage log for the Taurus for 2007.

Other expenses

Respondent disallowed $2,770 of petitioner's claimed deduction for Schedule C "Other expenses" for 2006. Respondent subsequently conceded that

[*7] $450 of that figure was allowable.[6]  The remaining $2,320 that was disallowed consists of $770 reported on the return for "health maintenance" items and $1,550 reported for "cultural supplies".  The health maintenance items consisted of vitamins and nutritional supplements that petitioner had purchased for personal use.  The cultural supplies included ti leaves and other plants, some of which petitioner used personally for medicinal purposes and some of which she claims she gave as gifts to clients.  Petitioner did not maintain contemporaneous records of the recipients of the claimed gifts or the business purpose of the gifts.

Petitioner timely petitioned this Court for redetermination of the deficiencies respondent determined for 2006 and 2007.

OPINION

Business use of residences

As a general rule, section 280A(a) provides that no deduction shall be allowed with respect to the business use of a dwelling unit that is used by the taxpayer as a residence during the year.  However, section 280A(c)(1) provides an

---

[6]Respondent conceded at trial, with respect to a $450 "Other expense" deduction for "Charitable donations", that petitioner had shown entitlement to a charitable contribution deduction on Schedule A, Itemized Deductions, of $472 for 2006.

[*8] exception for certain business uses of a dwelling unit, provided the dwelling unit has a portion which is exclusively used on a regular basis:

> (A) as the principal place of business for any trade or business of the taxpayer,
>
> (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or
>
> (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

The Supreme Court has laid out a two-part test to determine whether such a "home office" constitutes a taxpayer's principal place of business: (1) the relative importance of the activities performed at each business location, and (2) the amount of time spent at each place. Commissioner v. Soliman, 506 U.S. 168, 175 (1993). However, Congress adjudged the Soliman standard too rigid and enacted flush language following section 280A(c)(1)(C) designed to liberalize it. The Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 932(a), 111 Stat. at 881; see H.R. Rept. No. 105-148, at 407 (1997), 1997-4 C.B. (Vol. 1) 319, 729. This flush language provides that

> the term "principal place of business" includes a place of business which is used by the taxpayer for the administrative or management activities of any trade or business of the taxpayer if there is no other fixed location of such trade or business where the taxpayer conducts

**[*9]** substantial administrative or management activities of such trade or business.

Sec. 280A(c)(1).

Petitioner has not satisfied any of the section 280A(c)(1) exceptions that would allow a deduction for the business use of the Susanville or Clearlake Oaks residences. There was no separate structure at either residence, nor did she use either to meet with clients. See sec. 280A(c)(1)(B) and (C). That leaves only the exception for the use of a portion of each residence exclusively and on a regular basis "as the principal place of business for any trade or business of the taxpayer" as used in section 280A(c)(1)(A), as further modified in the flush language thereafter.

For the reasons discussed below, we conclude that neither the Susanville residence nor the Clearlake Oaks residence was petitioner's principal place of business within the meaning of section 280A(c)(1) during 2006 and 2007. The Moss Beach office was a fixed location, and according to petitioner's own testimony she performed 50% of her work there in 2006 and 75% in 2007. It can be readily inferred, especially in the absence of any contrary evidence, that petitioner performed the administrative and management activities relating to her accounting business ratably over the year--with the result that approximately 50%

**[*10]** and 75% of these activities would have been performed at the Moss Beach office in 2006 and 2007, respectively. Indeed, petitioner testified that she hired temporary assistants to perform significant bookkeeping tasks for the business in 2007 and that that work was done at the Moss Beach office. Therefore, we conclude on this record that petitioner conducted substantial administrative and management activities at a fixed location (the Moss Beach office) other than the Susanville and Clearlake Oaks residences. Accordingly, neither of the two residences was petitioner's principal place of business as defined in the flush language.

Because petitioner estimates that she performed at least half the work of her business at the Moss Beach office during each of the years at issue, she has not shown that the remaining work split between the Susanville and Clearlake Oaks residences exceeded the work performed at the Moss Beach office in importance or time expended. Accordingly, neither of the residences was petitioner's principal place of business for either year without regard to the flush language.

We therefore sustain respondent's disallowance of the deductions claimed for business use of a residence for 2006 and 2007.

**[*11]** <u>Business use of vehicles</u>

Generally, a taxpayer is permitted to deduct the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Sec. 162(a). When deductions are claimed for the business use of property that is also readily used for personal purposes, the requirements for substantiating business use are stricter. Such property--denoted "listed property" in section 274--includes "passenger automobiles" such as the Thunderbird and the Taurus for which petitioner claimed business use deductions. <u>See</u> secs. 280F(d)(4)(A)(i), 274(d)(4).

To substantiate deductions for the business use of passenger automobiles, a taxpayer must prove various elements of business use including, inter alia, the amount of business mileage and the total mileage for the taxable year. Sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Each such element must be substantiated by "adequate records" or by "sufficient evidence corroborating * * * [the taxpayer's] own statement." <u>Id.</u> para. (c)(1), 50 Fed. Reg. 40017. Adequate records for this purpose include account books, diaries, logs, statements of expense, trip sheets, or similar records and documentary evidence made at or near the time of the expenditure. <u>Id.</u> subpara. (2)(i). If a taxpayer is unable to satisfy the "adequate records" standard, he must

**[*12]** establish each element of the expenditure by: (1) his own statement, including specific and detailed information and (2) by other corroborative evidence sufficient to establish each element. Id. subpara. (3)(i), 50 Fed. Reg. 46020. When the element to be established is the amount of business use, this corroborative evidence must be direct evidence--such as a statement in writing or oral testimony of witnesses setting forth detailed information about the use--or documentary evidence. Id. Such documents "must contain sufficient information as to each element of every business/investment use." Id. subpara. (2)(ii)(C), 50 Fed. Reg. 46018.

With respect to petitioner's deductions for business use of the Thunderbird for 2006 and 2007, respondent allowed $11,793, or approximately 83% of the $14,246 petitioner claimed as a deduction for 2006, and he allowed $8,406, or approximately 65% of the $12,962 petitioner apparently[7] claimed as a deduction for 2007. To substantiate her claim that she is entitled to larger deductions, petitioner testified at trial that she used the Thunderbird--the only vehicle she owned during 2006 and 2007--exclusively for business purposes. In the same testimony, she later contradicted herself by conceding that 5% of her use of the vehicle each year was personal, including visits to her father in which she took

---

[7]See supra note 5.

**[*13]** him to buy groceries. Apparently realizing the difficulties her trial testimony presented for her claim of 100% business use of the Thunderbird, petitioner offered a third version of events in her posttrial brief in which she claims for the first time that the trips to visit her father occurred when the Thunderbird was in the shop for repairs and that the trips to the grocery store were made in his vehicles.

Statements in posttrial briefs are, of course, not evidence, see, e.g., Rule 143(b); Niedringhaus v. Commissioner, 99 T.C. 202, 214 n.7 (1992), except to the extent they may constitute an admission by a party, see Fed. R. Evid. 801(d)(2). Nonetheless, petitioner's evolving explanations concerning the use of the Thunderbird confirm the initial skepticism triggered by the claim that the only vehicle she owned was never used for personal purposes. Considering all the facts and circumstances, we conclude that petitioner's own statement concerning the business use of the Thunderbird is not credible. Moreover, the documentary evidence she offers to corroborate her statement--repair invoices recording the Thunderbird's odometer readings at various times and some receipts for vehicle-related expenditures--shed no light whatsoever on the portions of Thunderbird's business use during 2006 and 2007. Consequently, petitioner has failed to

**[\*14]** substantiate that she is entitled to any deductions for business use of the Thunderbird beyond those respondent allowed.

As for petitioner's claimed deduction for business use of the Taurus in 2007--based on the standard mileage rate for business use--respondent contends that the deduction is not allowable because a taxpayer may not claim the standard mileage rate for more than one vehicle, citing Rev. Proc. 70-25, sec. 3.03, 1970-2 C.B. 506, 507. The revenue procedure governing the use of the standard mileage rate for 2007, however, is Rev. Proc. 2006-49, sec. 11, 2006-2 C.B. 936, 944. Rev. Proc. 2006-49, sec. 5.06(1), 2006-2 C.B. at 938, allows a taxpayer to claim the business standard mileage rate for up to four vehicles. Although the vehicle limit would not bar petitioner's use of the business standard mileage rate for 2007, other clear terms of the revenue procedure render her ineligible to use that rate for the Taurus. Rev. Proc. 2006-49, sec. 5.02, 2006-2 C.B. at 938, provides that a taxpayer may use the business standard mileage rate "with respect to an automobile that is either owned or leased by the taxpayer." The ownership requirement of Rev. Proc. 2006-49, sec. 5.02, <u>supra</u>, reflects the fact that the deduction using the standard mileage rate "is in lieu of all fixed and variable costs of the automobile allocable to business purposes * * * . Items such as depreciation * * * are included in fixed and variable costs for this purpose." <u>Id.</u>

**[\*15]** sec. 5.03, 2006-2 C.B. 938.  A taxpayer may not claim depreciation deductions for property he does not own.  <u>Arevalo v. Commissioner</u>, 124 T.C. 244, 251 (2005), <u>aff'd</u>, 469 F.3d 436 (5th Cir. 2006).

Petitioner did not own or lease the Taurus in 2007.  She is therefore not eligible to use the business standard mileage rate to compute the deduction claimed on her 2007 return, and she has produced no other competent evidence to substantiate a business expense deduction for the Taurus for 2007.[8]  Consequently, we sustain respondent's disallowance of a deduction for the car and truck expenses that petitioner claimed for 2007 for the business use of the Taurus.

<u>Other expenses</u>

As discussed in our findings of fact, respondent disallowed petitioner's 2006 Schedule C "Other expense" deductions of $1,550 for "cultural supplies" and $770 for "health maintenance" items.

---

[8]At trial petitioner introduced various credit card statements with handwritten notations purporting to indicate that she had paid certain vehicle-related expenses with respect to the Taurus.  However, before trial petitioner stipulated that she did not reimburse the owner of the Taurus for any business use of the vehicle during 2007.  Because the timing of the handwritten notations on the credit card statements rests entirely on petitioner's self-serving testimony and is not otherwise corroborated, we conclude that this evidence is insufficiently probative to warrant disregarding the parties' stipulation.  <u>See</u> <u>Jasionowski v. Commissioner</u>, 66 T.C. at 318.  Accordingly, we find that no reimbursements for business use were made.

**[*16]** The "cultural supplies" consisted of ti leaves and other plants, some of which petitioner used personally as apparel[9] and/or for medicinal purposes and some of which she contends she gave as gifts to clients.[10]

To the extent petitioner used any of the ti leaves or other plants for personal medicinal purposes, they constitute nondeductible personal expenses. See sec. 262. Such expenditures are not business expenses, nor are they deductible as medical expenses because there is no evidence that they were a prescribed drug. See sec. 213(b). To the extent any of the ti leaves or other plants were given as gifts to clients, a deduction for those expenditures would need to be substantiated pursuant to the strict requirements of section 274. Sec. 274(d)(3). Thus, petitioner would need documentation prepared at or near the time of the expenditure indicating: (1) the amount of the expense, (2) a description of the gift, (3) the business purpose of the gift, and (4) her business relationship to the persons receiving the gift. See sec. 274(d)(4); sec. 1.274-5T(c)(2)(ii)(A), Temporary

---

[9]Petitioner concedes in her posttrial brief that the ti leaves she wore as apparel would constitute a nondeductible expense.

[10]For the first time in her posttrial brief, petitioner also claims that some of the plants were used to decorate her office or offices. As there is no sworn testimony or other evidence to support this claim we do not consider it further. See Rule 143(b); Niedringhaus v. Commissioner, 99 T.C. 202, 214 n.7 (1992) ("Statements in briefs * * * do not constitute evidence and cannot be used as such to supplement the record.").

[*17] Income Tax Regs., supra. The allowable deduction for business gifts is also limited to $25 per recipient. Sec. 274(b).

By her own admission, the substantiation petitioner provided for her claimed business gifts--which consisted of marked-up credit card statements--was prepared approximately a year after she received the credit card statements. The substantiation was therefore not prepared at or near the time of the gift. Moreover, it does not identify the recipients of the business gifts or the value of the gift given to a particular client. We therefore sustain respondent's disallowance of the deduction petitioner claimed for "cultural supplies" for 2006.

Petitioner has also not shown entitlement to her 2006 Schedule C "Other expense" deduction of $770 for "health maintenance" items. The items in question were vitamins and nutritional supplements that petitioner purchased for personal consumption. These items were personal expenditures, see sec. 262, and vitamins or organic foods purchased and consumed pursuant to a self-imposed regimen rather than a physician's recommendation or prescription are not deductible, sec. 213(b); Lingham v. Commissioner, T.C. Memo. 1977-152. Therefore, the "health maintenance" item expenses are not deductible.

**[*18]** <u>Penalties</u>

Respondent determined accuracy-related penalties under section 6662(a) and (b)(1) and (2) on the basis of negligence or disregard of rules and regulations and a substantial understatement of income tax for both 2006 and 2007. On brief respondent argues for the substantial understatement penalty only with respect to 2007. As a general rule, the Commissioner has the burden of production and must offer sufficient evidence to indicate that imposing a penalty is appropriate. <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001); <u>see also</u> sec. 7491(c). Once the Commissioner meets this burden of production, the burden shifts to the taxpayer to show that it is inappropriate to impose the penalty because of exculpatory factors, including reasonable cause. <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447.

Section 6662(a) and (b)(1) and (2) imposes a 20% penalty on any underpayment of tax attributable to negligence or disregard of rules and regulations or a substantial understatement of income tax, respectively. "'[N]egligence' includes any failure to make a reasonable attempt to comply" with the internal revenue laws. Sec. 6662(c). It connotes "'a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" <u>Freytag v. Commissioner</u>, 89 T.C. 849, 887 (1987) (quoting <u>Marcello v. Commissioner</u>, 380 F.2d 499, 506 (5th Cir. 1967), <u>aff'g</u> 43 T.C. 168

**[\*19]** (1964) <u>and</u> T.C. Memo. 1964-299), <u>aff'd</u>, 904 F.2d 1011 (5th Cir. 1990), <u>aff'd</u>, 501 U.S. 868 (1991). This includes "any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs. Disregard of rules and regulations includes any careless, reckless, or intentional disregard of the Internal Revenue Code, the regulations, or certain Internal Revenue Service administrative guidance. <u>Id.</u> subpara. (2). In general, an "understatement" of income tax is the excess of the amount of tax required to be shown on the return over the amount of tax actually shown on the return. Sec. 6662(d)(2)(A). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. <u>Id.</u>

No penalty is imposed with respect to any portion of an underpayment if the taxpayer acted with reasonable cause and in good faith in regard to that portion. Sec. 6664(c)(1). That determination is made case-by-case, depending on the facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Those circumstances include the experience, knowledge, and education of the taxpayer. <u>Id.</u>

Respondent has met his burden of production with respect to petitioner's negligence and disregard of rules or regulations for both 2006 and 2007. Petitioner claimed substantial home office expense deductions for each year while

[*20] simultaneously maintaining and deducting the costs of the Moss Beach office, in violation of a statutory rule limiting such deductions to a home office that either constitutes the taxpayer's principal place of business, is used for client meetings, or is a separate structure. As there is no evidence petitioner undertook any investigation to determine the correctness of these return positions, this portion of the understatement is attributable to a careless disregard of rules or regulations. See sec. 1.6662-3(b)(2), Income Tax Regs. Her inflated claims of business use of passenger automobiles were negligent under the circumstances, as were her claims of deductions for business gifts, given the lack of records to substantiate these deductions. See id. subpara. (1). Petitioner's attempts to deduct clearly personal items, such as nutritional supplements and ti leaves purchased for her own use, were obviously negligent.

In addition, petitioner conceded various challenged deductions at or before trial. She conceded that she was not entitled to a $12,000 depreciation deduction claimed for 2007 with respect to a "gravel trailer" in which she admitted she had-- at most--a security interest as a lender. Petitioner also conceded that she received but failed to report interest income and income from a State tax refund in 2007. Finally, petitioner conceded that she was not entitled to a $72,055 wage expense

[*21] deduction for 2007 but, as discussed below, we conclude that she has shown reasonable cause with respect to that erroneous deduction.

With one exception, petitioner has failed to show that she acted with reasonable cause and in good faith with respect to the underpayments for 2006 and 2007. See sec. 6664(c)(1). The determination of reasonable cause is made on a case-by-case basis, considering circumstances such as the knowledge and experience of the taxpayer. Sec. 1.6664-4(b)(1), Income Tax Regs. During the years at issue petitioner was an accountant providing tax return preparation services to others. Other than some vague assertions about how items are treated for tax purposes in the case of nonprofit organizations, petitioner offered no justification for what were substantial departures from well-settled tax rules. We accordingly sustain respondent's determination of negligence penalties for the underpayments for 2006 and 2007 with one exception.

Petitioner claimed an erroneous $72,055 deduction for a wage expense for 2007. However, the circumstances giving rise to that deduction were that petitioner agreed to serve in effect as a payroll agent for a client. The client paid over funds totaling $69,884 to petitioner during 2007, which she deposited into a trust account. From this trust account, petitioner arranged, using the services of a third-party payroll services firm, to pay out wages to the client's employees

[*22] totaling $72,055.  On her 2007 Schedule C petitioner included in gross receipts the $69,884 received from the client and claimed a wage expense deduction for the $72,055 she arranged to be paid out to the client's employees. Respondent now concedes that the $69,884 is not includible in gross receipts, and petitioner concedes that she is not entitled to a wage expense deduction of $72,055.  The discrepancy in the two figures is not otherwise explained in the record, but we conclude that to the extent the discrepancy may give rise to an underpayment for 2007, petitioner had reasonable cause for that portion of the underpayment.

In the event the Rule 155 computation indicates that petitioner's understatement of tax for 2007 exceeds the greater of $5,000 or 10% of the amount of tax required to be shown on the return, we conclude that the underpayment for 2007 is also attributable to a substantial understatement of income tax for which she has not shown reasonable cause, except as found herein.

To reflect the foregoing,

Decision will be entered under

Rule 155.